# THE BALTIMORE AND OHIO RAILROAD CO. *vs.* JOSEPH CHARVAT.

*Negligence—Shunting Cars on Coal Pier Without Signal of Approach—
Injury to Workman Unloading Car on Adjoining Track—Contribu-
tory Negligence—Instructions to Jury.*

Plaintiff was employed by a coal company to unload cars on its wharf or
pier.  Defendant, a railroad company, operated three tracks running
out to the end of the wharf, and when coal cars were on adjoining
tracks, the distance between the cars was only about two feet.  The
cars were put upon the wharf by being shunted or "kicked" up an
incline and around a curve which intercepted a full view of the wharf by
the brakeman in charge of the cars and a view of the cars by workmen
on the wharf.  The cars were so thrown upon the wharf both by day
and night upon orders from the foreman of the coal company to em-
ployees of the defendant.  On the evening of the accident which occa-
sioned this suit, it being then dark, plaintiff was engaged in unloading
a car standing on one of the wharf tracks by using a crowbar to keep
open a chute through which the coal passed from the bottom of the car
directly to a vessel lying alongside.  In so doing he was under the car
with his back towards the shore end of the pier and with one foot and
leg passed over the adjoining track.  Such a posture was customarily
assumed by the workmen for a few minutes at a time and was necessary
to push large lumps of coal through the chute.  While plaintiff was so
situated two coal cars were shunted upon this adjoining track and ran
over his leg.  No notice or warning of the approach of these cars was
given and no light was carried in front of them.  Defendant's agents
knew that other cars were then being unloaded upon the adjoining
track.  The evidence on the part of the plaintiff was that it had been
customary to give notice when cars were to be thrown upon the wharf,
but this was contradicted by defendant's evidence.  Plaintiff had been
employed in work at the wharf for four or five years.  *Held*,

1st.  That the trial Court properly refused to take the case from the jury
either upon the ground that the plaintiff's contributory negligence was,
as matter of law, such as to preclude a recovery, or because there was
no legally sufficient evidence of defendant's negligence; the testimony
upon both points being such as should be submitted to the jury.

2nd.  That a prayer instructing the jury that their verdict must be for the
defendant, if the plaintiff did not keep a lookout for cars coming upon
the wharf and that his injury would not have occurred if he had kept
such lookout, was properly refused, since it ignores all inquiry into the
negligence of the defendant and does not define the character of the
outlook that the plaintiff should have observed.

3rd. That an instruction that the defendant is not liable for its failure to give a signal of the approach of the cars, if the agent of the coal company notified the defendant's agents to throw the cars upon the wharf, because the defendant's agents were thereby justified in assuming that the wharf was clear, was also not proper to be granted under the circumstances of the case.

4th. That a prayer directing a verdict for the defendant if it was the custom to put cars upon the wharf without signal of their approach and this custom was known to the plaintiff was not a proper instruction, not only because there was a conflict of evidence as to the existence of such a custom but also because if it existed and if it was negligent, the defendant would not be thereby relieved from liability.

5th. That an instruction is erroneous which directed a verdict for the defendant if the jury found that at the time of the accident the cars were shunted upon the pier in the same manner in all respects as cars had previously been shunted and that plaintiff was familiar with such manner, thereby assuming the risks of the employment, because if the jury believed the plaintiff's evidence, then under this instruction they had only to find that at the time of the accident the defendant did not employ the mode of shunting testified to in order to find the defendant guilty of negligence, whereas it was the province of the jury to say whether the defendant, in the method employed by it at the time of the accident, was using due care under the circumstances.

Appeal from the Baltimore City Court (WRIGHT, J.), where there was a judgment on verdict for the plaintiff for $2,500.

At the trial the defendant offered the following prayers :

*1st.* That there is no legally sufficient evidence in the case that the injury to the plaintiff was directly caused by the negligence of the defendant corporation and their verdict must therefore be for the defendant.  (*Refused.*)

*2nd.* That by the undisputed evidence in the case the negligence of the plaintiff directly contributed to the injury sued for, and their verdict must therefore be for the defendant. (*Refused.*)

*3rd.*  Even though the jury should believe from the evidence that the negligence of the defendant Railroad Company directly caused the injury to plaintiff yet their verdict must be for the defendant if they find that the plaintiff could, by the exercise of reasonable and ordinary care have avoided said injury.  (*Granted.*)

*4th.*  If the jury believe from the evidence that the plaintiff

had for four or five years been familiar with the wharf at which the accident occurred and the use of it, and was well aware that cars were liable to be thrown upon said wharf at all hours of the night and day and that said plaintiff while at work upon said wharf did not keep a lookout for cars coming upon said wharf, and that his injury would not have occurred if he had kept such lookout, then their verdict must be for the defendant. (*Refused.*)

*5th.* If the jury believe from the evidence that it was the custom of the Merchants' Coal Company to notify the employes of the defendant when said Merchants' Coal Company desired its coal cars to be thrown upon its wharf, and that the foreman of said coal company had within a few minutes before the accident to plaintiff notified the conductor of defendant that it desired certain cars put upon the wharf, and had been informed by said conductor that said cars would be so put upon said wharf in a few minutes, and notified to look out for them, that the agents of said defendants were justified in believing that said wharf was clear for the putting on of said cars, and were not required to give any signal of the approach of such cars for the benefit of the employes of the said Merchants' Coal Company, and the verdict of the jury must be for the defendant even if they should find that the accident might have been prevented by the giving of such signal. (*Refused.*)

*6th.* That if the jury shall find from the evidence that the wharf upon which the accident occurred belonged to the Merchants' Coal Company and that the custom of putting coal cars upon said wharf in the manner described in the evidence without any warning or signal of their approach was allowed by said Merchants' Coal Company and known to its employes, including the plaintiff, then the plaintiff cannot recover in this case and their verdict must be for the defendant. (*Refused.*)

*Instruction by the Court in lieu of Defendant's 4th, 5th and 6th Prayers.* If the jury shall believe from the evidence that at the time of the happening of the accident referred to in this

case, the cars of the defendant were shunted upon the pier of the Merchants' Coal Company in the same manner in all respects as cars had been theretofore shunted upon said pier; and that the plaintiff by reason of his long continued employment upon the said pier was familiar with the said manner of throwing cars upon said pier, if they shall so find, then the plaintiff assumed the risks incident to his employment by reason of the said mode of the shunting of the cars of the defendant, and their verdict must be for the defendant.

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, PEARCE, SCHMUCKER and JONES, JJ.

*W. Irvine Cross*, for the appellant.

*Wm. Colton* (with whom were *Lewis Hochheimer* and *H. B. Scrimger* on the brief), for the appellee.

JONES, J., delivered the opinion of the Court.

This case was brought, by the appellee here, in the Court below to recover damages for injuries received by him in consequence of the alleged negligence of the appellant, a railroad corporation, under circumstances appearing in the evidence. The appellee was an employee of the Merchants' Coal Company and at the time of the accident causing his injuries he was employed on the wharf of that company in unloading coal from the cars of the appellant and pushing it with a crowbar into a chute in the wharf through which it was received into a scow of the coal company. Coal was delivered by the appellant on the wharf of the coal company in cars which were run upon the wharf so as to stand directly over the chutes. The cars are described in the evidence as large iron cars and are so constructed that they can be opened from the bottom to let the coal drop into the chutes. Large lumps of coal coming from the car would stop up the chute and prevent the coal from going into it. To prevent this and to keep the

opening through the chute clear for the admission of the coal as it came from the car it was necessary that these large lumps of coal should be punched or pushed into the chute as they fell from the car.    There were upon the wharf in question three tracks which were used by the railroad (appellant) in delivering coal there.    The length of the wharf, as given by one of appellant's witnesses, an engineer, who testified that he measured it, is 573 feet including some trestle work that runs back over the land and its width is 36 feet.    According to the same witness it is 420 feet from "where the wood structure begins to the place where the chutes are."

The three tracks upon which the appellant operated its cars upon the wharf were, according to testimony on the part of the plaintiff below (appellee here), from three to four and a half feet apart, from five to six feet in width and the space between the outer track on either side of the wharf and the outer edge of the wharf from three to four feet.    The cars projected over the track on either side so that when cars were passing, on the middle track, cars on either of the other tracks, the space between the cars was diminished by the amount of this projection of the cars over the two tracks.    The space between the cars when opposite each other was according to the plaintiff only sufficient to admit of passing between them "side ways."    According to the testimony on the part of the appellant there was space enough between the cars for a man to walk down between them and the men did go along between them for the purpose of coupling the cars.    It appeared further in the testimony on the part of the appellant that the length of the cars was from 36 to 38 feet; that the weight of one of the cars which were being put upon the wharf at the time of the accident, and which caused the injury to the appellee, was 32,000 pounds and of the other from 25,000 to 26,000 pounds, and when loaded with coal, as they were at the time in question, one would weigh about 40 tons and the other about 20 tons; that the width of a car was about nine feet, and the projection of the car on either side over the track from one to two feet.    The testimony of one witness upon the part of the

appellant, which that of others tended to corroborate, was that by actual measurement, the width of a car was found to be nine feet, the width of space outside of the tracks on the western side of the wharf four feet six inches ; on the easternmost side four feet eight inches ; the width of tracks on the wharf from outside to outside of rails five feet one inch ; space between tracks from rail to rail five feet nine and one-half inches ; thus making the projection of the cars, on either side, over the track one foot eleven and one-half inches, and the space between cars opposite each other on the middle and either of the side tracks one foot ten and a half inches.

Appellant's witnesses also testified that the cars were put upon the wharf by orders of the foreman of the wharf or notification of the yard master of the appellant company who gave the orders to the conductor ; and that if the yard master is not there the conductor receives the orders direct from the foreman and they are put on the wharf by his (foreman's) orders. The wharf is higher than the level of the land from which it is built out.   As one of the witnesses expressed it the cars have to go up " a hill " to be placed upon the wharf.   The mode of putting cars upon the wharf is to attach an engine to them, take them a short distance out on the tracks of the railroad and then run them back with the engine with sufficient speed to push them up on the wharf where the cars are detached from the engine and proceed, by reason of the incline of the wharf or the momentum acquired, along the track to the proper position over the chutes—their motion being controlled by the brakes.   Going upon the wharf the course of the cars described a curve around a house which stood near the point where the cars would go from the land upon the wharf, and intercepted a view of the wharf so that those in charge of the cars when they were being forced upon the wharf as described could not see anything thereon.

Upon the occasion in question here two cars loaded with coal and of the size and weight already mentioned were pushed, in the manner described, upon the wharf and down the middle track.   There was evidence on the part of the

appellee that there was a custom with the employees of the appellant when cars were being "shunted" in this way upon the wharf to send a brakeman ahead of the cars with a lantern to give warning to persons on the wharf of their approach, and that on the occasion in question there was no man and no light on the cars that caused appellee's injuries when they were "shunted" upon the wharf. According to appellant's testimony there was no such custom; and it was also in evidence on the part of the appellant that when these cars were pushed upon the wharf they were in charge of a brakeman who was upon the rear end of the car, which was in front going upon the wharf, in a position to work the brakes. This brakeman had a lantern but he testified that it was so placed on the cars as not to serve any purpose of a warning to persons ahead of the car on the wharf as it could not be seen. It is not claimed that any warning of any kind of the approach of the cars that injured the appellee was given. Cars were all the time being put upon the wharf at frequent intervals day and night; and appellee testified you could never tell when they were coming. When these cars were being unloaded the evidence was that there was great noise made by the coal falling from the cars. The appellee testified that the accident happened at eight o'clock at night on August 17th, 1899; that it was very dark and that there were no lights on the wharf. Appellee also testified that he had been in the service of the Merchants' Coal Company and employed steadily upon this wharf for four or five years.

At the time of the accident to the appellee he was engaged with other parties in unloading a car standing to the right, (looking towards the water end of the wharf) of the middle track and was on the left side of the car being unloaded and next to the middle track. In his work he was using a crowbar weighing as he testified, about six pounds and long enough to reach to his forehead when he was standing up. He was working under the car that was being unloaded with his back towards the car that struck him and, as seems to be conceded in the case though that does not expressly appear in

the evidence, he had his left foot and leg partly on the middle track.   While he was in this position the cars that caused the injury to the appellee after being shunted upon the wharf as has been described, proceeded down the middle track and caught his foot and leg under the wheels of the car causing a very serious injury.

In the course of the trial below seven exceptions were taken to testimony in the case by the appellant, three of which have been abandoned.   The appellant also excepted to the action of the trial Court upon the prayers which makes the eighth and the most important of the exceptions presented here for consideration.   This last exception will be noticed first.   It goes to the granting of three instructions asked for by the appellee and to the refusal of the trial Court to grant the first, second, fourth, fifth and sixth prayers offered by the appellant and to an instruction granted by the Court in lieu of the appellant's fourth, fifth and sixth prayers.

There was no error in the rejection of the first and second prayers of the appellant.   The first sought to withdraw the case from the consideration of the jury upon the ground that there was no evidence legally sufficient to show that the injury to the appellee "was directly caused by the negligence of the appellant;" and the second sought to do the same upon the ground "that by the undisputed evidence in the case the negligence of the plaintiff (appellee), directly contributed to the injury sued for."   In both of these aspects of the case it was proper that the evidence should be submitted to the jury for their finding thereon.   The care which the law exacts of a defendant in a case like this is the care which a person of ordinary prudence would, or ought to, use under the circumstances of any given case to avoid injury to others; and it is relative.   The degree of care to be observed depends upon the necessity for it which arises out of the circumstances. Now in this case it is obvious that the operation of the defendant's (appellant's) cars upon the wharf in question was attended with danger to those who had occasion to be upon the wharf when they were being so operated.   This appears

from the facts already recited as being in evidence.    In addition to these, it is also in evidence that but a few moments before the cars that injured the plaintiff were pushed upon the wharf the conductor of the appellant was upon the wharf to haul off some empty cars and upon being asked if he was going to put on those two cars answered that he was and would do so in two or three minutes and accordingly the cars were so put on.    The question then is suggested whether it was not known to this conductor who sent the two cars in that at that very time there were cars upon the wharf to be unloaded and that the employees upon the wharf were likely to be engaged in unloading them of the manner of doing which there was evidence that the employees of the appellant who were managing the cars, including the conductor, had knowledge.    Yet the testimony was that no warning was given.    Without dwelling more particularly upon the testimony submitted upon the question of the negligence of the appellant it would seem to be clear that this is a case in which such question ought to be left to the jury under all the circumstances of the case. .

As to the question of the contributory negligence of the appellee it seems equally clear that it was one which it was the province of the jury to pass upon.    It was in testimony that it was necessary for the plaintiff (appellee) to be where he was in performing the work in which he was engaged ; that his position was the usual one occupied by persons doing the same work ; that there were others engaged at the time with him ; that he would only occupy this position or be engaged in pushing the coal into the chute "for a moment or two" so as to get out the first few big lumps when they would get upon the top of the car and shovel the coal out.    In addition to this besides the testimony offered by the appellee as to the custom of the appellant's servants to give warning of the approach of the cars when being put upon the wharf a witness of the appellant testified "when we run up there with cars on the wharf and one of us happens to see anybody, we holler, whoop, something or other like that ; another thing,

if we think they do not see us, or anything like that, we will stop the car and do everything in a man's power to keep from hitting anybody or killing anybody that can be done." The same witness testified "we lookout at all times; it is our duty to lookout at all times; at any time to keep from having an accident." In view of this and all the testimony in the case it cannot be said as matter of law that the conduct of the appellee was such negligence as produced his own injury or so directly contributed to produce it as to disentitle him to recover. As was said in the case of *B. & O. R. R. Co.* v. *Fitzpatrick*, 35 Md. 32, "the degree of care required of the plaintiff to entitle him to recover was simply such as should have been reasonably expected from an ordinarily prudent person in his situation; that is to say, reasonable care. If he exercised such degree of care, though he may have been guilty of some negligence or want of caution, he was still entitled to recover for any injury sustained in consequence of the defendant's negligence."

The appellant's third prayer was granted in connection with appellee's first and second prayers. Appellant's fourth prayer was properly rejected. It asked the Court to instruct the jury that if the appellee had for four or five years been familiar with the wharf, &c., and knew that cars were liable to be thrown upon the wharf at any time of the night or day and that he did not while at work, &c., keep a lookout for cars coming upon the wharf and that his injury would not have occurred if he had kept such lookout that he could not recover. This prayer in effect asserted the proposition that the appellee must have exercised not merely reasonable and ordinary care under all the circumstances but he must at all events have exercised sufficient care to have avoided all negligence on the part of the appellant. The lookout the appellee was to observe was not defined and the meaning of the term as used is not very clear. It might be understood by the jury that the appellee was to keep a constant and unceasing watch for cars and that as a reasonably prudent and cautious man he could not for a few moments have his attention diverted by the

necessities of his work nor let his caution relax for a moment. The instruction would if granted have shut out from the consideration of the jury any question of the negligence of the appellant and confined them simply to the inquiry whether the appellee had kept a sufficient lookout to secure his own safety upon the wharf whatever may have been the negligence of the appellant. The proposition embodied in this fourth prayer did not grow out of the facts and circumstances appearing in testimony in this case and was inappropriate.

The fifth prayer of the defendant was properly refused. In the first place there was testimony going to show that the agents of the appellant might reasonably have been held to have had knowledge that the wharf was not clear at the time the cars that caused the injury in question were put upon the wharf and that one of the tracks was actually occupied at the time by cars that were being unloaded and if the prayer was otherwise sound this knowledge should have been negatived before the assumption set out in the prayer that the wharf was clear could have been allowed to excuse the appellant's want of care in not giving warning of the approach of the cars if the jury should find that under the circumstances failure to give warning was want of due care. Again the testimony as a whole did not warrant the putting to the jury to find any such assumption on the part of the agents of the appellant. It tended to show their knowledge of and familiarity with the general condition of the wharf and there was no testimony to show that the wharf was cleared or prepared for the occasions when the cars of the appellant were put upon it. But aside from these considerations it is not perceived how any assumption that the agents of the appellant may have indulged in because of the simple notification from the owner of the wharf that the cars were wanted upon the wharf for the purpose of being unloaded could be held conclusive of the appellee's right to recover when there is no testimony to show on his part any knowledge of such notification or of the intended shunting of the cars upon the wharf at the time.

The sixth prayer of the appellant assumes the existence of

a custom on the part of the appellant to put cars upon the wharf, &c., without signal or warning. About this there was a conflict in the testimony. If it was negligence under the circumstances for the appellant to run its cars upon the wharf without signal or warning the fact that the agents of the appellant made it a custom to do so would be only to say that they were habitually negligent and it could not affect the appellee's right to recover for such negligence if he should be injured in consequence of it unless with knowledge of the appellant's negligence he did not use due care under the circumstances to avoid it. The prayer omits this hypothesis and for the reasons stated was properly refused.

This brings us to the consideration of the instruction granted by the Court in lieu of the appellant's fourth, fifth and sixth prayers. The jury were thereby instructed that if at the time of the accident the cars of the appellant were shunted upon the wharf in question " in the same manner *in all respects* as cars had been theretofore shunted upon " the said wharf or pier and that the plaintiff was familiar with the manner of throwing cars upon said wharf then the plaintiff assumed the risks incident to his employment by reason of the mode of shunting the cars by the defendant and was not entitled to recover. In this there was error. The instruction is open to the criticism made of it by defendant's counsel. There was conflicting testimony as to the mode of shunting cars upon the wharf and under this instruction if the jury believed the plaintiff's testimony in this regard then by the necessary implication from the instruction they had only to find that at the time of the accident the defendant was not employing the mode of shunting testified to by plaintiff's witnesses to find the defendant guilty of such negligence as entitled the plaintiff to recover whereas it was the province of the jury to say whether the defendant in the method employed by it at the time of the accident was using due and ordinary care under the circumstances. Any change of method on the part of the defendant was not negligence " *per se* " as the jury might be led to believe from the framing of the instruction. As for this error there

must be a reversal of the judgment it may be said that the plaintiff not being a servant of the defendant did not as respects the defendant assume the risks of his employment on the wharf by reason of his familiarity with it so as to absolve the defendant from liability for the negligence of its servants or from the use of due and ordinary care to avoid injury to the defendant as the instruction in question seems to assert. The plaintiff's prayers in connection with the third prayer of the defendant, all of which were granted, correctly stated the law of the case.

As to the exceptions to questions of evidence none of the questions ruled out was legitimate cross-examination in that these questions did not relate to what had been brought out in chief and it is not perceived how the matter sought to be elicited was material to the inquiry as to the negligence of the defendant or the contributory negligence of the plaintiff. If all of these questions had been answered favorably to the defendant no excuse would have been shown for negligence on the part of the defendant; nor whether there was such negligence nor would it have tended to prove that there was any contributory negligence on the part of the plaintiff. That is to say the evidence sought to be elicited had no tendency to prove anything material, as the case appears from the record, in respect to either of these inquiries. For error in the instruction granted by the Court in lieu of defendant's fourth, fifth and sixth prayers the judgment below will be reversed and the case remanded for a new trial.

*Judgment reversed and new trial awarded.*

(Decided March 5th, 1902.)

McSHERRY, C. J., partially concurring.

In my view this case ought to be reversed without awarding a new trial. I think the second prayer of the defendant ought to have been granted. Judges FOWLER and PAGE concur in this view.