## BALTIMORE AND OHIO RAILROAD COMPANY *v.* FRANK ENGLE.

*Railroad Company—Moving Car On Private Property—Injury to Person On Track—Last Clear Chance—Instructions—Segregation of Facts.*

A railroad company, which sends an engine, with cars attached thereto, on private property, at the invitation of the occupant of the property, is required to use ordinary care to avoid injuring any person properly on the premises in the course of his employment.                                    p. 156

Evidence of the absence of a signal by bell or otherwise, in the case of an engine sent on private premises, was sufficient to take the case to the jury, in an action by one injured by such engine while at work on the premises.            p. 161

Expressions in an opinion should not be bodily incorporated in a prayer and presented as abstract propositions.       p. 162

In an action for injury to a man unloading a truck on a private siding, as a result of the striking of the truck by defendant's engine and tender, while backing, an instruction that defendant was not negligent because it did not have a man riding on the front step of the tender in the direction in which the engine was going, was properly refused as segregating certain facts and asking that the case be withdrawn as to them, as was an instruction that defendant was not required to station a watchman near the unloading platform.              p. 162

In an action for injury, to one unloading a truck which stood across a side-track on private property, caused by an engine moving on the track, evidence that the truck could have been seen seventy-five feet away justified the submission to the jury of the question of last clear chance, and so precluded the withdrawal of the case from the jury on the ground of contributory negligence.                                        p. 161

An instruction that, in passing on the question whether plaintiff's negligence directly contributed to the accident, the jury are not to consider whether defendant was guilty of negligence, even though they may believe that defendant was so guilty, *held* properly refused, as submitting an abstract proposition of law unconnected with any facts in the case.          p. 161

*Decided November 20th, 1925.*

Appeal from the Superior Court of Baltimore City (FRANK, J.).

Action by Frank Engle against the Baltimore and Ohio Railroad Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Among defendant's prayers, refused by the lower court, were the following:

*Fourth.*—The court instructs the jury as a matter of law that in passing on the question of whether the negligence of the plaintiff directly contributed to the accident, they are not to consider whether or not the defendant was guilty of negligence, even though they may believe that the defendant was guilty of negligence. In other words the plaintiff's conduct is to be measured by what he did or did not do, irrespective of what the defendant or its agents did or did not do.

*Sixth.*—The court instructs the jury as a matter of law that the defendant was not guilty of negligence because it did not have a man riding on the front step of the tender in the direction in which the engine was going.

*Seventh.*—The court instructs the jury as a matter of law

that the agents of the defendant in charge of its engine had no duty to anticipate that the plaintiff would place the automobile truck in question across the switch track of the Chesapeake Paper Board Company, as testified to in this case, and therefore said defendant's agents owed the plaintiff no duty to avoid injuring him or striking the automobile truck until they became aware of his or the automobile truck's position of danger.

*Ninth.*—The court instructs the jury as a matter of law that the defendant under the circumstances of this case was not required to station a man at or near the unloading platform, where the accident occurred, to prevent an automobile truck from fouling the switch track in question while the engine was working on the premises of the Chesapeake Paper Board Company.

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and WALSH, JJ.

*Duncan K. Brent,* with whom was. *Allen S. Bowie* on the brief, for the appellant.

*William D. Macmillan,* with whom were *Harold Tschudi* and *Semmes, Bowen & Semmes* on the brief, for the appellee.

ADKINS, J., delivered the opinion of the Court.

The accident out of which this case arose occurred at the unloading platform of the Chesapeake Paper Board Company. The paper company's plant is adjacent to the Locust Point branch of the Baltimore and Ohio Railroad Company. The paper company owns a private siding which runs from the main track of the railroad into its property and over which it receives cars of coal and materials used in its business. There is a fence around the property and a gate across the private side-track. This side-track comes in on a curve and runs along the back entrance side of the main building. The unloading platform is on that side and is used by trucks. They can get in position for unloading only by being

placed directly across said side track. This track curves sharply around the corner of the building not far from said platform.

On the day of the accident Mr. Moore, the shipping clerk of the paper company, according to a written statement made by him a few days afterwards, let through the gate a Baltimore and Ohio engine and tender pushing a load of coal, telling the conductor that everything was all right, and warning the coal passers and laborers to clear the track as a load of coal was coming. After the car passed around the side of the building he went to the office to report its arrival, and while in the office, another employee came in and stated that Frank Engle, the driver of the truck, had his leg broken when the engine hit the truck. Engle came into the grounds after the engine and car had gotten out of sight around the corner of the building and did not know they had come in.

It appears from the evidence that after the coal car was uncoupled the engine and tender were backed around the corner and struck the truck which Engle had backed up to the platform and which was standing across the track. He had just made ready to unload. He was knocked on the tail gate of the truck and one of his legs was broken by being caught between the tail gate and the bales of paper in the truck. He sued the railroad company and obtained a verdict. This appeal is from the judgment on that verdict.

There are seven bills of exception, six to rulings on evidence and the seventh to the granting of plaintiff's first prayer and to the refusal of defendant's first, second, fourth, sixth, seventh and ninth prayers. The reporter is requested to set out defendant's fourth and seventh prayers.

In his very able brief counsel for appellant strongly insists that the case should have been withdrawn from the jury for the lack of legally sufficient evidence to prove negligence on the part of the defendant, and because of uncontradicted evidence of contributory negligence on the part of plaintiff, which propositions were presented by appellant's first and second prayers.

Appellant's contention seems to be that, as it was an invitee to the premises of the paper company, of which plaintiff was an employee, it had the right to have said premises kept free from any obstruction across the way by which it was invited to enter so long as it was on the premises, and consequently owed plaintiff no duty. In *Shearman and Redfield on Negligence* (6th ed.), sec. 10-A, it is said: "There are few relations or situations in life in which the law does not impose the duty on everyone not to injure another by his acts or omissions, wanting in due, reasonable or ordinary care, when harm is observable and preventable."

Passing by the query whether one on the premises of another is ever without duty to those who may be lawfully there, it is obvious that the contention referred to disregards several things important to be considered in the present case:

(a) The party complaining here is not the owner of the premises.

(b) Plaintiff was also an invitee and defendant knew that trucks were frequently placed, just as plaintiff's was, across the track—in fact, had to be so placed in order to deliver their loads.

(c) The undisputed evidence is that the plaintiff did not know defendant's engine and car were on the premises at that time.

In such circumstances, all the authorities which have been brought to our attention, with one exception, hold that defendant was required to use ordinary care to avoid injuring the plaintiff or any one who might be in like situation. *Balto. & O. R. R. v. Charvat*, 94 Md. 569; *Pettit v. New York, N. H. & H. R. Co.*, 41 R. I. 380; *Jacowitz v. Del., L. & W. R. Co.*, 87 N. J. L. 273; *Hendrickson v. Wisconsin Central R. Co.*, 143 Wis. 179; *Hudson v. Atlantic Coast Line R. Co.*, 142 N. C. 198; *Mullery v. Great Northern Rwy. Co.*, 50 Mont. 408; 33 *Cyc.* 76.

The one exception is *Campbell v. New York, N. H. & H. R. R. Co.*, 92 Conn. 322, which seems to hold that if the railroad was notified to move certain cars which plaintiff

was painting on the premises of plaintiff's employer, and the conductor was given a list of cars to be moved, he had the right to assume that he could move these cars in the usual course; that he had the right to believe when he received these lists that no repairs were then in progress on the cars on these tracks; and that if it was the rule and practice to put flags in front of cars on which repairs were being made, and the railroad company knew this, it had the right to rely on the absence of a flag. This case is in direct conflict with *Balto. & O. R. R. Co. v. Charvat, supra,* in which this Court held a prayer bad, the theory of which was that notification from the owner of the premises that cars were wanted there for the purpose of being unloaded was conclusive of the right to recover of an employee of such owner. With reference to defendant's first and second prayers, then, it remains to consider whether there was any evidence, (a) of a breach of duty on the part of defendant in failing to exercise ordinary care to avoid injury to the plaintiff; or (b) whether the undisputed evidence shows any negligent act of plaintiff so distinct, prominent and decisive and of such a character that ordinary minds would not differ in declaring it to be negligent (*Balto. & O. R. Co. v. Hendricks,* 104 Md. 76); and, if so, whether there was any evidence that defendant could have avoided the consequences of plaintiff's negligence after the defendant's servants discovered, or by the exercise of reasonable care could have discovered, plaintiff's perilous position.

Goddard, the conductor, testified that the coal car was placed where the fireman and passers wanted it, which was about 128 feet from the point where the truck was struck; that the engine was cut loose and came out of there and just got around the corner of the building when it went into this truck; that in coming out of the siding the engine backed out, tender in front; that the witness was in front of the engine, which would be the cowcatcher end, but the back of the engine in the direction in which it was going; that standing where he was the engine and tender would be in front,

and that he could not see anything; that the first he knew
of the accident was when the engine stopped; that the en-
gineman applied the air and in applying the air the wheels
locked and slid into the truck; that the wheels were caused
to lock by wet paper and dirt on the track; that at that time
there was a pipe around the building some place that water
came out of and ran right down along side of the track; that
he and the engineer made an observation of the first point
at which a truck could be seen in the position the truck was
on the day of the accident by the engineer in the cab; that
from the back end of the tender to where the truck was stand-
ing was 28 feet, and the tender was 22 feet long and the
space between the tender and the engine was about a foot,
so the truck was about 51 feet from the place where it was
first visible by the engineer; that witness had quite often on
going into the siding seen a truck across the track where this
accident happened, when it would be ordered off by Mr.
Moore; but he had never in coming out from the siding seen
a truck there except on this occasion (but on cross-examina-
tion the witness, when asked whether he had ever asked a
truck driver of the paper company, who had his truck backed
across the side track, to move so that the engine could come
out of the siding, said that he did not remember); that from
where the engine was uncoupled from the coal car until it
hit the truck he judges its speed was about three or four
miles an hour; that at the time of the accident the brakeman
was on the front of the engine, which is the back part in the
direction in which it was going, on the opposite side from the
witness; that in the cab of the engine were Engineman Gan-
non and Fireman Bell; that there was also a flagman in the
crew, but he was on the main track protecting the part of
the train which had been left there.   On being asked what
he knew as to the bell ringing, from the time the coal car was
cut off until the time of the accident, his answer was: "Well,
in my opinion or own mind, the bell was ringing, but I could
not swear to it," "because we are accustomed to hear the
bell so much, Mr. Gannon is nearly always ringing it, and

we get accustomed to hearing it ring and don't pay no attention to it." He further testified that there was a rule requiring the bell to be rung before starting the engine. Witness further testified that for some time before the accident he would go into this siding to deliver cars of coal from one to four or five times a week, and had no special days for going in; that there was a uniform practice as to some one keeping the trucks off the siding when he was working on it; that Mr. Moore would always get the trucks out of the road and he always stayed out there and looked out until the engine came out." "Mr. Moore always came out there and looked out for us while we were in there, kept the trucks and things out of the road until we got out of there. On this one occasion he did not." That on several occasions he had seen Mr. Moore keep trucks off the siding when witness was in there working; that he relied on Mr. Moore being in the back of the siding and keeping trucks off of it; that on the day of the accident Mr. Moore opened the gate; that witness walked along with him to the back of the building, then walked on around the head of the engine; that he left Mr. Moore back of the building, and walked ahead of the engine to see that there were no obstructions on the track.

On cross-examination witness said the reason he did not ride on the front of the engine in the direction in which it was going was because it was unsafe. He explained that it was unsafe because of bales of paper piled there; that lots of times the cars will rub against it, and it is liable to drop behind the engine, and when the engine comes out of the plant it will run into it. When asked why he didn't walk in front of the engine if he was afraid to ride on the front when it was coming out of the siding, he answered that "it was not necessary * * * because these people have always been looking out for us."

Gannon, the engineer, testified that the only damage done to the truck, a little paint on the body of the truck was scarred; that the engine was running about six miles an hour; that the reason the engine did not stop within the space of

28 feet was because the locked wheels slid; that the water and mud and paper made it slide; that you could not see the rail for the mud and stuff before you got in there, and you could not see it when you went out except for the impression that you made; that he could have stopped within 28 feet if the rail had been dry. He further testified that the tank was a sloping tank and he could see over it; that the bell on the engine works by air; that he started it ringing when the engine went in the gate and it was still ringing when the engine slid into the truck and he did not turn it off until after the accident; that he does not know whether the fireman was in the cab or down on the footboard; that in addition to the air valve for ringing the engine bell, there is also a rope to the bell in case the air pressure plays out; that there would be no difficulty in hearing the bell unless a person was deaf. The witness further testified that he moved by signals; that there was no one ahead of him signaling on this occasion; that there are steps on the back end of the tender, but witness had never seen a man ride on them at that point.

Bell, the fireman, testified that he was on the footboard on the front end of the engine, or back in the direction in which it was going; that from where he was he could not look over the tender; that on account of the curve he could not see around the front of the tender; that the bell was ringing.

Engle, the plaintiff, testified that he did not know the engine was on the grounds when he backed his truck across the track; that he heard no bell or whistle or any other signal. Other witnesses also testified they heard no bell or whistle and that they were in a position to hear if any signal had been given.

There is some conflict of testimony as to whether there was always some employee of the paper company present to keep trucks off the track when an engine was on the premises. Moore denied that he always did, and said sometimes there was no one there. Moore also testified that several times before the accident he had seen the conductor, Goddard,

the brakeman, Miller, and also another conductor, ride on the front of the engine coming out, that is, on the tender.

There is no testimony in the case that plaintiff had any knowledge of any custom or practice of Moore or any other employee of the paper company keeping the track clear when an engine was on the siding.

A witness for the plaintiff testified he took a photograph, offered in evidence, in the middle of the track seventy-five feet from the truck. The truck is clearly visible in that photograph. The testimony of defendant is also controverted as to conditions of the track which made it impossible to stop the engine in time to avoid the accident. The above is the substance of the testimony in the case.

The evidence of absence of any signal by bell or otherwise was alone sufficient to take the case to the jury on the question of primary negligence. The jury could also well have found negligence from the manner of handling the train.

The question of contributory negligence is a close one on the facts in the record, and it is not necessary to decide it here, because, even if plaintiff was guilty of contributory negligence as a matter of law, still if the truck could have been seen seventy-five feet away, as indicated by the photograph referred to, there was enough evidence in the case to justify the submission to the jury of the question of last clear chance, and that was enough to preclude the withdrawal of the case on the ground of contributory negligence. Defendant got more than it was entitled to on the evidence in this case, in the granting of its third prayer without qualification, embodying the theory of last clear chance. *United Rys. Co. v. Kolken,* 114 Md. 160, and cases there cited.

Defendant's first and second prayers were therefore properly refused.

Nor do we find any error in the refusal of its fourth, sixth, seventh and ninth prayers. As to the fourth, it submits an abstract proposition of law unconnected with any facts in the case. Besides it is not a correct statement of the law as ap-

plied to the facts. *Balto. & O. R. R. Co. v. Windsor,* 146 Md. 436.

In *Philadelphia and Baltimore R. R. Co. v. Holden,* 93 Md. 417, the Court quotes from *L. N. A. & Chicago R. R. Co. v. Stommel,* 126 Ind. 41, language very like this prayer. But both these cases were crossing cases, involving the duty to stop, look and listen, and where the element of last fair chance did not enter. Besides, this Court has more than once warned that expressions in an opinion should not be bodily incorporated in a prayer and presented as abstract propositions.

The sixth and ninth prayers segregate certain facts and ask, in effect, that the case be withdrawn from the jury as to them.

It might well be, that to have a man riding on the front steps of the tender, or to station a man at or near the unloading platform where the accident occurred, was not necessary if other proper precautions were taken. But it was for the jury to say whether defendant was guilty of negligence in failing to take these or some other precaution to prevent accident.

It is proper to state, in passing, in reference to the sixth prayer, that the cases of *Balto. & O. R. R. Co. v. Welsh,* 114 Md. 536, and *State use of Harvey v. Balto. & O. R. R. Co.,* 69 Md. 346, cited by appellant, do not support its contention. In the first mentioned case the testimony showed that the tender was one of modern type, at the rear of which there was no provision for a person to stand as a lookout; and in the second, the Court said it was a question of fact whether in that particular case the engine was of modern construction, which made it unsafe to place a man on the step of the tender; and the Court was careful to say that in such case there must be some substitute suitable to the new style of engine, so as to comply with the spirit and intent of the ordinance.

The ordinance referred to was not offered in evidence in this case, and we are not here concerned with its provisions,

even if it would have been applicable otherwise; but there is evidence in the case not only that there were steps on the back of the tender, but that these steps had been used in backing out of this siding.

The seventh prayer was properly refused for reasons stated in discussing the first prayer.

The plaintiff's only prayer was the ordinary measure of damages prayer, and was unobjectionable.

We find no reversible error in the rulings involved in the first four exceptions. The questions were unnecessary and called for answers which were self-evident. But we are unable to say that there was such prejudice to the defendant as to justify reversal.

We find no error in the ruling on the fifth and sixth exceptions. They are covered respectively by what we have said in discussing defendant's sixth and first prayers.

*Judgment affirmed, with costs to appellee.*