THE BOARD OF COUNTY COMMISSIONERS OF
HOWARD COUNTY *vs.* ANTOINETTE
PINDELL.

*Prayers: excluding theory of which there is evidence; rejection
of correct—, when not error.   Evidence: contradiction
in—; question for jury.   Roads: county commission-
ers; liability.   Damages: permanent inju-
ries; question for jury.*

It is error to reject prayers when by so doing the theory
of one of the parties, of which there is evidence, is entirely
eliminated from the consideration of the jury.          p. 81.

Where there is a contradiction upon material questions of fact
it is a matter for the consideration of the jury.          p. 79

If a granted prayer contains the law of the case the judgment
will not be reversed although other prayers correct in them-
selves may have been rejected.                              p. 81

In general, County Commissioners are not liable for accidents,
due to the bad condition of the county roads, unless they have
had notice of such condition in time for them to make
repairs.                                                    p. 81

In an action against a Board of County Commissioners for
damages for injuries received from the bad condition of
the county roads, a prayer that leaves to the consideration

of the jury whether the plaintiff did receive such injury. and if so, whether the same was permanent, and how far, if at all, it was calculated to disable her from engaging in employment, for which, in the absence of such injury, she would have been qualified, is proper.                    p. 79

*Decided December 5th, 1912.*

Appeal from the Circuit Court for Anne Arundel County (BRASHEARS. J.), to which the cause had been removed from Howard County.

The facts are stated in the opinion of the Court.

The following are the prayers of the plaintiff and of the defendant, and the action of the lower Court on each:

*Plaintiff's First Prayer.*—If the jury finds that at the time of the accident spoken of in this case, that there were ruts and holes in the public road mentioned in the evidence of such a character as if allowed negligently to remain during the winter season, would naturally become dangerous, if the jury shall so find, and of which the defendants or their agents could by the exercise of ordinary care have had knowledge in time to have repaired the same before said accident and that the rain and snow falling upon and melting in said ruts and holes caused the hole, testified to by the plaintiff's witnesses, and rendered said road unsafe for persons travelling thereon. And that the defendants or their agents could by the exercise of ordinary care have known of said dangerous condition in time to have repaired the same, and if they find that the plaintiff's horse while travelling upon said road in the exercise of ordinary care fell into said hole and was injured, together with the plaintiff herself, then their verdict must be for the plaintiff. (*Granted.*)

*Plaintiff's Second Prayer.*—If the jury shall find a verdict for the plaintiff, then in estimating the damages, they are to consider her health and condition before the injury complained of as compared with her present condition in consequence of said injury and whether the same is in its nature permanent, and how far, if at all, it is calculated to disable her from engaging in employment, for which, in the absence of such injury, she would have been qualified, and also the physical and mental suffering, if any, to which she was subjected by reason of such injury, and to allow her such damages as in the opinion of the jury, will be a fair and just compensation for the injury she has sustained. (*Granted.*)

The defendant specially excepted to the granting of the plaintiff's prayers in the following words:

The defendant specially excepts to the granting of the plaintiff's first prayer:

1st. Because there is no evidence in the case legally sufficient to prove that the defendant was negligent in not having said road repaired.

2nd. Because there is no evidence in the case at all to show that the defendant had any notice of the hole in the road, if one was there, or that they could have discovered the same by the exercise of due diligence. (*Overruled.*)

The defendant specially excepts to the granting of the plaintiff's second prayer:

Because there has been no evidence offered in this case to show that the plaintiff has been so injured by reason of the accident complained of as to disable her from engaging in the employment for which in the absence of said injury she would have been qualified. (*Overruled.*)

*Defendant's First Prayer.*—That there is no evidence in the case legally sufficient to entitle the plaintiff to recover, and their verdict must be for the defendant. (*Rejected.*)

·*Defendant's Second Prayer.*—That there is no evidence in this case legally sufficient to show that the injury complained of by the plaintiff to herself and to her horse and buggy and harness was caused solely by the negligence of the defendant and the verdict of the jury must be for the defendant: (*Rejected.*)

*Defendant's Third Prayer.*—That there is no evidence in this case legally sufficient to show that the defendant had notice or could have had notice of the dangerous condition of the public road before the accident in time to repair it and the verdict of the jury must be for the defendant. (*Rejected.*)

*Defendant's Fourth Prayer.*—The defendant prays the Court to instruct the jury, that there is no evidence in this case legally sufficient to show that the plaintiff was permanently injured by the accident. (*Rejected.*)

*Defendant's Fifth Prayer.*—That the duty imposed by law upon the County Commissioners does not require them to make and keep the public roads in perfect condition and repair, but only that they shall use reasonable care and diligence in the exercise of the powers vested in them in regard to the public road and in determining whether in this case the commissioners have acted with reasonable care and diligence, it is proper for the jury to take into consideration all the surrounding circumstances in the case. (*Granted.*)

· *Defendant's Sixth Prayer.*—If the jury find from the evidence that the hole in the road complained of, if they find there was a hole in the road, in which the plaintiff's horse stepped before he fell, and shall find that said defect in the road was caused by the heavy rains and the thawing usual in February, the plaintiff is not entitled to recover, unless the jury shall find that the defendant had sufficient time to have acquired notice of said defect in the said road by the exercise of ordinary diligence so as to have repaired the hole in the road before the accident complained of, and

in this connection the jury are entitled to take into consideration all the surrounding circumstances. (*Rejected.*)

*Defendant's Seventh Prayer.*—The jury is instructed that they cannot infer negligence on the part of the defendant county commissioners, from the fact that part of the road in question was rounded up for the purpose of placing hard material upon the same, and that said part was left without hard material upon the same during the fall and winter of nineteen nine and nineteen hundred and ten, although opened for travel by said county commissioners, the defendant. (*Granted.*)

*Defendant's Eighth Prayer.*—If the jury shall find from the evidence that the plaintiff's horse while being driven by the plaintiff's driver attached to the vehicle in which the plaintiff was seated fell in the public road as testified to in the evidence by reason of the breast strap which was used on the horse, choking him and thereby shutting off his wind, then the plaintiff is not entitled to recover in this case. (*Granted.*)

*Defendant's Ninth Prayer.*—If the jury shall find from the evidence that the public road in question was out of repair and dangerous for public travel, yet the plaintiff is not entitled to recover in this case, unless the jury shall further find that the defendant was negligent in not having said road repaired and rendered safe for public travel.

(*Ninth granted in connection with plaintiff's first prayer.*)

*Defendant's Tenth Prayer.*—If the jury shall find from the evidence that the plaintiff's horse while being driven by the plaintiff's driver attached to the vehicle in which the plaintiff was seated stepped into a hole in the road as testified to in this case, which hole had a depth of about two feet, and fell down and threw the plaintiff from the vehicle, and injured the plaintiff and the vehicle, harness and horse, and shall further find that said hole in the road could not be seen by a traveller passing along said road and

that the defendant, the county commissioners, had no notice directly or indirectly of said hole being in the said road, and could not have learned of said hole being in the road by exercise of due diligence, then the verdict of the jury must be for the defendant. (*Rejected.*)

*Defendant's Eleventh Prayer.*—The defendant prays the Court to instruct the jury, that if they shall find from the evidence that the public road where the plaintiff is alleged to have been injured and her horse, wagon and harness injured was then in such good repair, as to be reasonably safe for persons travelling thereon with ordinary care, then the plaintiff is not entitled to recover. (*Rejected.*)

*Defendant's Twelfth Prayer.*—The defendant prays the Court to instruct the jury that the burden is on the plaintiff to prove that the defendant is guilty of negligence, and that said negligence has occasioned the injury, and if the evidence fails to establish either of these propositions, the burden has not been gratified and their verdict must be for the defendant. (*Granted.*)

*Defendant's Thirteenth Prayer.*—The defendant prays the Court to instruct the jury, that it is the right and duty of the County Commissioners of Maryland to make necessary and proper repairs upon the highways, and when such repairs are judiciously and reasonably done, the commissioners are exempt from liability for consequential damages. (*Granted.*)

*Defendant's Fourteenth Prayer.*—The defendant prays the Court to instruct the jury as a matter of law, that the plaintiff in order to entitle her to recover in this case, she must first prove that there was a neglect of duty on the part of the defendant and that the accident complained of was the direct consequence of such neglect of duty. (*Granted.*)

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, BURKE, THOMAS, PATTISON and STOCKBRIDGE, JJ.

*Robert Moss* (with whom was *Joseph L. Donovan* on the brief), for the appellant.

*John G. Rogers,* for the appellee.

BRISCOE, J., delivered the opinion of the Court.

The record in this case presents the defendant's exception to the ruling of the Court below, in granting the plaintiff's first and second prayers, in rejecting the defendant's first, second, third, fourth, sixth, tenth and eleventh prayers and in overruling the defendant's special exceptions to the granting of the plaintiff's first and second prayers.

The defendant's fifth, seventh, eighth, twelfth, thirteenth and fourteenth prayers were granted, as offered, and the judgment, being in favor of the plaintiff, the defendant brings this appeal.

The suit was instituted by the plaintiff against the defendant, the Board of Co. Commissioners of Howard Co., in the Circuit Court of that county, but was subsequently removed to the Circuit Court for Anne Arundel County, where upon trial, the plaintiff recovered a judgment of six hundred dollars and costs.

The declaration contains two counts, and the suit was brought to recover damages for personal injuries received by the plaintiff and for injuries to her horse, wagon and harness, while driving on one of the public highways of Howard county, commonly called "the Beechwood Avenue," in the First Election District of that county.

The declaration avers, that the County Commissioners negligently allowed and permitted, the county road where the accident happened to be and to remain out of repair and in an unsafe and dangerous condition; that the plaintiff while driving along this highway using due care and caution, was thrown from the vehicle in which she was driving and painfully injured, and her horse, then, being driven and drawing the vehicle, was badly cut and injured by reason of his having trod into a large and dangerous hole in the

road, maintained by the defendant corporation, which hole
was well known by the defendant to exist, yet the defendant
did not repair the hole and the dangerous place, but per-
mitted it to remain so unrepaired and unfixed, well knowing
the same to be a dangerous place and a constant menace,
to those driving along and using the road.

The second count, relates to the injury to the person, the
damage to the vehicle and horse, and the same negligence
is averred as in the first count.

The plaintiff testified that on or about the fifteenth of
February, 1910, while being driven by a colored boy in a
phaeton on the public road where the accident occurred, her
horse suddenly plunged in a mud hole, and she was thrown
on the dashboard, then back again, and then out against the
wheel; that the hole was a deep one, but she had no idea
of its size or depth; that the horse was now valueless, and
that the harness and vehicle were injured; that she was
bruised and began to suffer with pain in her hip and had to
give up teaching for nine days, and one year later consulted
a physician and had to wear a plaster case from that time
until now.   She further testified, that the road had been left
in an unfinished condition in the fall of 1909, and no work
had been done on the road from that time to the day of the
accident, and it was filled with mud, and you could not tell
what was there; that at the time of the accident Mr. Gro-
venoe Hanson, one of the county commissioners, drove up,
and exclaimed: "Did you ever see such a terrible road?"
and that when her team left the macadam road and had gone
about twenty feet, going up grade very slowly, the horse
fell.

Upon cross-examination, she testified that she had been
over the road four or five times that winter; that she went
to see Dr. Riley on the 11th of February, and had been there
three or four times since; that she lost no time and did not
employ any one to teach for her.

The colored boy, who drove the vehicle on the day of the
accident, testified that after leaving the macadam road and

going twenty feet up grade, all at once while the horse was walking, he went down and struggled, and when "I got him out of the hole help came; the hole was as deep as my arm and about six or eight inches wide." That the hole was filled with water, and it was in the day time, that he could see nothing there to show that it was dangerous; that the plaintiff was thrown out and he went to the horse; she was down in the mud and the shaft strap was broken, the road there was all right, but the whole road was muddy. He further testified on cross-examination that the hole was deep; that he could tell by the horse's knee; that both feet went down, one deeper than the other.

Dr. Riley, who attended the plaintiff, testified in substance, that the plaintiff had been compelled to wear a plaster cast, but that he did not consider the injury permanent.

Miss Pindell, a sister of the plaintiff, testified that her sister was well and strong before the accident, but that since that time she was practically an invalid, unable to do home work, or to attend to her ordinary duties and that she had lost flesh.

On the part of the defendant, Mr. Hanson, one of the county commissioners, testified that he rode over the road where the accident occurred twice a week; that the State had macadamized the road except about six hundred feet, and this had been graded, rounded up, rolled and left in a smooth and nice condition in the fall of nineteen hundred and nine, that it was a good road in the month of December, and was in fairly good condition up to the time of the thaw; that on the day of the accident, in returning from Ellicott City, he rode up to the road where he overtook Miss Pindell; that the road was up grade and macadam and that he followed her team to the end of the macadam, and it struck muddy road; that he heard her horse wheeze, then the horse suddenly turned and fell. The colored boy, who was driving, jumped out; then Miss Pindell jumped out and went up in the path at the side of the road, and Miss Pindell

said to the boy, "why didn't you carry out my instructions and put on the horse's collar instead of the breast strap?" that the condition of the road had never been complained of; that at the time of the accident, the mud in the road was six or seven inches deep, and the road was in good condition and that there was no holes except the ruts usually made by wagon wheels in a dirt road.

The witness Kreager, who saw the accident, testified, that Miss Pindell placed her hand on the wheel and jumped out, that he did not see any mud on her, and that she did not fall out; that the road at that point was thirty feet, and that he saw no hole, although he looked for it, and could have seen one had there been one, and that he used the road twice a day going to and from work, and that there it was no worse than other parts of the road.

George Arter, a witness for the defendant, who also saw the accident, testified, that he used the road with a pair of mules and it was alright, except muddy.

The witness Turner, who lived near the road, testified, that he used the road at least four times a day going in vehicles to and from the depot; that he was over it five minutes before the accident and saw no hole; that the road was no worse that day than any other time, it was muddy; that this road had been harrowed, dragged, shaped up and rolled the previous fall and left in a fine condition; that the road was wide at that point and that no grading had been done there, nor had any stone been taken out there, that could leave a hole of any size; that he had his teams employed on the road, and was there in person daily, while work was going on, and that he was well and thoroughly acquainted with the road; there was a slight fill at that point from two to six inches, but no more.

The witness Mullin testified, that he used the road, frequently hauling over it; that he saw no hole; that the road where the accident happened was in no worse condition than other parts of the road.

There was also testimony to the effect, that no complaint had been made, or reported to the County Commissioners as to the bad condition of the road.

There being then a clear conflict in the evidence in this case upon the material questions of fact, the case was one for the jury, and the Court committed no error in rejecting the defendant's first, second, third and fourth prayers, which were in the nature of a demurrer to the evidence.

The plaintiff's first prayer, although somewhat involved, we think sufficiently stated the law as applicable to the plaintiff's theory of the case. A somewhat similar prayer was approved by this Court in *Harford County* v. *Hause,* 106 Md. 444, as presenting the law applicable to the plaintiff's theory of the case. The defendant's first prayer, however, in that case, was amended so as to submit the law bearing upon the defendant's theory of the case; it was granted as amended and approved by this Court.

We find no error in the ruling of the Court in granting the plaintiff's second prayer, as to the measure of damages. There was a conflict in the evidence as to the nature and character of the injury, if the jury found there had been an injury to the plaintiff, and the question, "Whether the same was in its nature permanent and how far, if at all, it was calculated to disable her from engaging in employment for which, in the absence of such injury, she would have been qualified," was properly left to the finding of the jury. The verdict in the case was not excessive, and the defendant could not have been injured, by the granting of this prayer.

The Court could not say under the evidence in the case as a matter of law, that there was no evidence of permanent injury. The special exception to this prayer was, also, properly overruled.

We think, there was error in rejecting the defendant's sixth prayer, which submitted the defendant's theory of the case to the finding of the jury.

The prayer is as follows: If the jury find from the evidence that the hole in the road complained of, if they find

there was a hole in the road, in which the plaintiff's horse stepped before he fell, and shall find that said defect in the road was caused by the heavy rains and the thawing usual in February, the plaintiff is not entitled to recover, unless the jury shall find that the defendant had sufficient time to have acquired notice of said defect in the said road by the exercise of ordinary diligence so as to have repaired the hole in the road before the accident complained of and in this connection the jury are entitled to take into consideration all the surrounding circumstances.

Practically the same prayer was approved by this Court in *Hause Case,* 106 Md. 444, as presenting the theory of the defendant's case.

In *Eureka Fertilizer Co.* v. *Baltimore Copper Co.,* 78 Md. 179, this Court said, the case presented, opposite and conflicting theories founded upon the opposite and conflicting evidence introduced by the contesting parties, and each of these parties, if the evidence supported his theory, was entitled upon making such a request to have the legal principles involved in that theory announced to the jury upon a hypothetical statement of the facts upon which it was founded.

In the *Eureka Case,* the judgment was reversed and a new trial was awarded, and the Court said the result was that the defendant's theory was eliminated from the case, though both that theory and the plaintiff's were entitled to be passed on by the jury. This was not only error, but was injurious to the appellant. The facts of the case at bar bring it directly within the rulings in the *Eureka Case, supra,* and other cases decided by this Court. *Deford* v. *Dryden,* 46 Md. 248; *Corbett* v. *Wolford,* 84 Md. 426; *Singer Sewing M. Co.* v. *Lee,* 105 Md. 673; *Caledonian Ins. Co.* v. *Traub,* 86 Md. 98.

The defendant's tenth prayer, was also rejected. It is as follows: If the jury shall find from the evidence that the plaintiff's horse while being driven by the plaintiff's driver attached to the vehicle in which the plaintiff was seated,

stepped into a hole in the road as testified to in this case, which hole had a depth of about two feet, and fell down and threw the plaintiff from the vehicle and injured the plaintiff and the vehicle, harness and horse, and shall further find that said hole in the road could not be seen by a traveler passing along said road and that the defendant, the County Commissioners, had no notice directly or indirectly of said hole being in the said road and could not have learned of said hole being in the road by exercise of due diligence, then the verdict of the jury must be for the defendant.

This prayer contained material questions to be passed on by the jury, and it was error to have rejected this prayer.

The defendant's sixth and tenth prayers, however, it will be seen, presented the theory of the defendant's case, and practically submitted the same questions. The granting of either of these prayers, in connection with the plaintiff's granted prayers would have covered the law of the case, but the rejection of both, eliminated entirely the defendant's theory of the case, from the consideration of the jury. *Whiteford* v. *Buckmyer,* 1 Gill, 127; *Adams* v. *Capron,* 21 Md. 205; *Jackson* v. *Jackson,* 80 Md. 192; *Higgins* v. *Carlton,* 28 Md. 139; *Day* v. *Day,* 4 Md. 262.

It is well settled, that where the granted prayers contain the law of the case, the judgment will not be reversed, if other prayers, although correct, are rejected, and this is so, because the law of the case has been sufficiently covered by the granted prayers. *Ins. Co.* v. *Robinson,* 115 M. 420; *Register* v. *Medcalf,* 71 Md. 528; *Balto.* v. *Pendelton,* 15 Md. 12; *2nd Poe, Pleading and Practice,* sec. 292, 292A; *Rosenkovitz* v. *United Ry. & Elec. Co.,* 108 Md. 306.

Nor would it be reversible error to reject a prayer which is substantially the same as an instruction already given. *Caledonian Fire Ins. Co.* v. *Traub,* 86 Md. 98; *Goodman* v. *Saperstein,* 115 Md. 684.

There was no error in the ruling of the Court in rejecting the defendant's eleventh prayer, or in overruling the special exceptions to the plaintiff's prayers.

No point was made as to the defendant's fifth, seventh, eighth, ninth, twelfth, thirteenth and fourteenth prayers, and they appear to have been granted without objection.

The principles of law applicable to this character of case have been so recently applied and passed upon by this Court, that we deem it unnecessary to discuss them here, but refer to some of the adjudged cases, where the principles are announced and settled *Harford Co.* v. *Hause,* 106 Md. 444; *Adams* v. *Somerset Co.,* 106 Md. 203; *Co. Commrs.* v. *Wilson,* 97 Md. 207; *Co. Commrs.* v. *Blackburn,* 105 Md. 226.

For the error, in rejecting the defendant's sixth and tenth prayers, the judgment will be reversed and a new trial will be granted.

> *Judgment reversed and new trial awarded,*
> *with costs to the appellant.*