# WILLIAM H. DOLBY

*vs.*

# CHARLES LARAMORE AND SUSIE M. LARAMORE.

*Contracts: canners and growers; breach; refusal of defendant*
*to accept goods; duty of plaintiff to minimize damages.*
*Experts: capacity.　Witnesses: estimates of——.*
*Prayers: segregating facts; withdrawing facts*
*from jury.　Evidence: improperly excluded,*
*when no ground for reversal.　Suits on*
*contracts: specially declared on;*
*and bill of par-*
*ticulars.*

Where a person wrongfully discharged brings suit against the employer for his loss of wages, etc., he is required to show that he used all reasonable exertion to minimize the loss resulting from the breach of the contract.　　　　　　　　p. 624

A tomato grower had a contract with a canner for taking his crop at a certain price; at a time when the canner was receiving more tomatoes than he could handle he refused to receive those of the grower; in an action by the grower against the canner, it was *held*, that the plaintiff and the jury would have been amply justified in inferring that such refusal was temporary only, one which might be terminated at any time, and there was no obligation upon the plaintiff to show that he had sought any other purchaser for the tomatoes so rejected.　　p. 624

In an action by a tomato grower against a canner with whom he had a contract for the purchase of his crop, the defendant, by a certain prayer, sought relief from liability as to all the tomatoes not accepted and receipted for, on the ground of the alleged unmerchantable character of some of the tomatoes tendered or delivered, constituting, as he claimed, a violation of the contract on the part of the plaintiff; at the time of such rejection the defendant did not annul the contract on this ground, but, on the contrary, according to his own evidence,

invited the plaintiff to send other tomatoes of a different qual-
ity, etc.; it was *held,* that such a prayer was improper.    p. 625

The fact that there was a contract between the plaintiff and
defendant for the sale and purchase of the plaintiff's crop, does
not negative or modify the cause of action set out in a suit for
goods bargained and sold; it only affects the price, terms and
conditions of the sale.                              p. 624

In a suit upon a contract, specially declared on, as such, and
where such contract forms the basis of the claim, the price named
in the contract, and not the actual value of the articles sold,
must be the measure of recovery, limited to the extent, that if,
in such a case, the plaintiff files a bill of particulars, he cannot
recover in excess of what he sets out in the bill.        p. 623

In an action for damages for the breach of a contract be-
tween a tomato grower and a canner, one shown to have been
both a tomato grower and a canner is properly qualified to
express an opinion as to the merchantable character of the toma-
toes in question, which he had seen.                   p. 622

A competent witness may give in evidence his estimate of the
number of animals, articles or persons, etc., observed by him,
provided the inference be founded on adequate data.     p. 622

Answers of witnesses that are irresponsive to the questions
asked may be properly stricken out, whether the answers were
intended to be evasive or not.                        p. 622

A prayer instructing the jury that the plaintiff is entitled
to recover, provided they find certain facts, withdraws from
their consideration all facts other than those mentioned; and if
from any facts so excluded the jury would have been justified in
drawing a conclusion different from that which the prayer
requires them to find, the prayer is erroneous.         p. 624

The wrongful action of the Court below in overruling an
objection to the evidence of a witness, is not ground for a
reversal when evidence of the same character had already been
admitted without objection.                        pp. 621-622

*Decided November 12th, 1913.*

Appeal from the Circuit Court for Wicomico County (STANFORD, J.).

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER and STOCKBRIDGE, JJ.

*James E. Ellegood* (with whom were *Henry B. Freeny* and *F. Leonard Wailes* on the brief), for the appellant.

*George H. Myers* (with whom was *Miles and Myers* on the brief), for the appellee.

STOCKBRIDGE, J., delivered the opinion of the Court.

Charles Laramore entered into a verbal contract with the appellant in the spring of 1912 to sell to him all the tomatoes which Charles could or would grow on his farm in Somerset County. The crop contracted for was to be used at the appellant's canning factory in Wicomico County. The fruit was to be delivered at the ferry landing on the Somerset side of the Wicomico River, and the price was to be fifteen cents a basket, or such higher price as the market rate might be that season. The season of 1912 was apparently a favorable one for tomatoes in Somerset and Wicomico Counties. The price rose in the packing season from fifteen to sixteen and two-thirds cents a basket. Laramore began his deliveries and obtained from Dolby, the appellant, receipts for 2915 baskets, some of which were delivered at the ferry landing by the driver for the appellee, and some at the canning factory on the other side of the river, apparently because the driver saw other teams, making similar deliveries, carry their loads across to the factory. Then came a disagreement, the appellant claiming that the fruit offered was not in merchantable condition, the appellee that his baskets were not promptly returned, so that he was delayed in picking the crop. Then there took place an interview between the plaintiff (appellee)

and the defendant (appellant) in which the plaintiff told
the defendant that he had hauled 410 baskets to the ferry
landing, the place of delivery stipulated in the contract, and
asked that the defendant send a scow across to get them,
whereupon the defendant said he was not going to receive any
more on that, the Somerset side of the river, that the other
growers had as lief deliver them on the other side, to which
the plaintiff claims to have replied "I'm not," while the
defendant insists that no answer at all was made. There is
also testimony on the part of the plaintiff that at an inter-
view had about the same time, in response to his request for
baskets, that the defendant had said, "yes I know it is bad
but you can see how it is around here, you can see for your-
self we are rushed here, I will send the scow over in a short
while, I will pay you for all that rot in the field; just do the
best you can with them." No further tomatoes were in fact
delivered to the defendant, and when the season closed the
plaintiff presented his demand to the defendant, for 3325
baskets of tomatoes at 16⅔ cents per basket, $554.16, and
1000 baskets rotted in the field at 13⅔ cents, $136.66, or a
total of $690.82.

The defendant, admitted his indebtedness for the 2915
baskets, less a set-off of $210.10, and denied any liability for
the 410 baskets taken to the ferry landing, which after re-
maining there for a day or two were "dumped", or for the
fruit alleged to have rotted in the field, and in accordance
with his admission made a tender of $283.00. The case was
tried in Wicomico County and a verdict rendered in favor of
the plaintiff for $474.33 and this appeal is from the judg-
ment entered thereon. The record contains four bills of
exception, of which three relate to questions of evidence, and
the fourth to the instructions given to the jury. These will
be considered seriatim. The first was to the action of the
Court in permitting Clinton Laramore, a brother of the
plaintiff, who had helped pick the tomatoes, give an estimate
of the number which had rotted in the field. Even if this
ruling of the Court had been erroneous, like estimates were

given by other witnesses without objection so that no injury was done the defendant, but the ruling was correct. It is said in 17 *Cyc.* 104, that "a witness may estimate the number of animals, articles or persons observed by him, provided his inference is founded on adequate data." Examples of the application of this rule are abundant. In *Read* v. *Barker,* 32 N. J. L. 477, evidence was admitted by a miller as to the quantity of grain a mill could grind; in *Thornton* v. *Savage,* 120 Ala. 449, and *Clink* v. *Gunn,* 90 Mich. 135, witnesses were permitted to state their estimates as to the number of logs involved; in *Pope* v. *Ramsey,* 78 Mo. App. 157, the rule was applied with regard to railroad ties, and in *Dennis* v. *Dennis,* 15 Md. 73, a farmer was permitted to give an estimate of the probable annual product of certain land and the expense of cultivation. Such evidence is in the nature of opinion, but in *Eastman* v. *Amoskeag Co.,* 44 N. H. 143 (82 Am. Dec. 201), it was said, "in questions relating to heights and distances and as to the number, quantity and dimension of things a witness may not be able to testify without an implied expression of opinion, but that is no objection to the testimony upon such points and subject."

The second exception was to the witness, Ross, being permitted to testify as to the quality of the rejected tomatoes. The fruit shown to the witness was identified by the plaintiff as a part of that returned by the defendant, and as Ross had been shown to have been both a grower and canner of tomatoes he had been properly qualified to express an opinion as to the merchantable character of the fruit.

The third exception was taken when the defendant was on the stand as a witness. He was asked, "what do you mean by merchantable?" to which he replied, "The Pure Food Law says we shan't put anything but red, ripe tomatoes in cans." Whether the answer was intended to be evasive or not, it was clearly irresponsive to the question asked, and was therefore properly stricken out. *Brashears* v. *Orme,* 93 Md. 442; *Skelley* v. *Vail,* 27 Ind. App. 87.

The remaining exception was reserved to the ruling of the Court on the prayers. The first of those on behalf of the plaintiff dealt with the right of the plaintiff to recover for the tomatoes delivered to and receipted for by the defendant, and the 410 baskets delivered at ferry landing, and subsequently dumped, while the second was limited to the right of the plaintiff to recover for those which had rotted in the field. The first is entirely free from objection and fairly presents the law under the plaintiff's theory of the case. The second prayer is, however, technically defective. It fixes the amount of recovery in the event of the jury finding certain facts, at the "worth" of the tomatoes, that is to say, *a quantum meruit*. The suit was upon a contract, specially declared on as such, and where a contract for the sale of articles forms the basis of a claim, the price named in the contract and not the actual value of the articles sold, must be the measure of recovery, limited only to this extent, that where a plaintiff in such a case has filed a bill of particulars, he cannot recover in excess of what he sets out in his bill. *Dick* v. *Biddle Bros.,* 105 Md. 308. But has the defendant been injured by this error? If not, such error alone will not justify a reversal of the judgment and the remanding of the case. The contract price was 16⅔ cents per basket, but in the bill of particulars filed with the *narr.* instead of charging the defendant with the full contract price as might have been done, the plaintiff has charged for 1000 baskets of tomatoes, rotted in the field, 13⅔ cents. The bill of particulars so made out claimed $690.82. If from this be deducted the full amount of the set off claimed of $210.10 there remains the amount of $480.72, while the verdict of the jury was for $474.33 or less than the amount claimed in the bill of particulars, and no injury to the defendant can be deduced from this state of facts.

The first prayer of the defendant seeks to limit the recovery of the plaintiff to the tomatoes delivered to and receipted for by him, and to relieve him from any liability for the balance because of their unmerchantable character and be-

cause the plaintiff made no effort to sell and dispose of the tomatoes. This prayer was properly rejected. The rule by which a person, wrongfully discharged, is required to use all reasonable exertion to minimize the loss resulting from the breach of the contract is without application in a case like the present. In those cases the contract is definitely and absolutely terminated, in this the reverse is true, the defendant was rushed with more fruit than he could handle at the time, but the plaintiff and the jury would have been amply justified in inferring this to be a temporary condition merely, one which might be terminated at any time and the plaintiff called upon to resume and continue his deliveries. The defendant's second and third prayers were granted after an amendment by the Court. The effect of the amendment made was to convert into good instructions what would have otherwise been erroneous, upon the principle laid down in *Singer Co.* v. *Lee,* 105 Md. 663, and *Corbett* v. *Wolford,* 84 Md. 426, in which latter case it was said "a prayer instructing the jury that the plaintiff is entitled to recover provided they find certain facts, withdraws from the jury the consideration of all facts other than those mentioned and if from such excluded facts the jury would be justified in drawing a conclusion different from that which the prayer requires them to find, it is error to grant such a prayer."

Nor can any error be found in the rejection of the defendant's fifth and tenth prayers, for the reasons already given when considering the plaintiff's second prayer. The ninth prayer of the defendant was properly modified by the Court. It would have been clearly error to remove from the consideration of the jury the first count of the declaration. The fact that the parties had made a contract for the sale and purchase of the plaintiff's crop of tomatoes, did not negative or modify the cause of action set forth in the first count, for goods bargained and sold, it only affected the price, terms and conditions of the sale. The plaintiff in his evidence failed, so far as the record discloses, to present any evidence

bearing on the allegation contained in the 7th count that "he was unable to find any other market for his crop," and therefore that count was properly withdrawn from the consideration of the jury.

The 4th, 6th and 7th prayers of the defendant may be considered together. They assumed the truth of the evidence offered on the part of the appellant and excluded from consideration the evidence produced by the plaintiff, and so were obnoxious to the rule as laid down in *Orem Fruit Co.* v. *N. C. Ry.,* 106 Md. 1, while the 6th and 7th prayers were open to the further objection that they asked that the defendant be relieved of a portion of his liability upon the theory of waiver, whereas the contract testified to was entire and not severable.

. The 8th prayer of the defendant seeks relief from liability as to all fruit not accepted and receipted for, upon the ground of the alleged unmerchantable character of some of the tomatoes delivered or tendered, and that this constituted a violation of contract on the part of the plaintiff. If the defendant had at the time of such rejection seen fit to annul the contract on this ground, there would have been much force in this contention. But he did not do it or attempt to, on the contrary according to his own version he invited the plaintiff to send other tomatoes of a different quality, and if the plaintiff's account be correct the defendant induced him to hold on by promising to pay for all tomatoes which rotted in the field.

The testimony presented great divergence at many points, but which evidence was to be given credence, was a matter for the jury, and the instructions as granted by the Court appear to have placed the case fully and fairly before them. The judgment appealed from will accordingly be affirmed.

*Judgment affirmed, with costs.*