# THE JONES HOLLOW WARE COMPANY, A Corporation,

*vs.*

# CHARLES E. HAWKINS.

*Evidence: error to exclude whole contract, if part admissible. Verdict of jury: effect of—; on appeal.*

The question of conflicting evidence and the weight of evidence and credibility of witnesses is for the jury exclusively.

p. 164

Suit for damages was brought by a prisoner in the penitentiary against a corporation engaged in manufacturing clay products with the help of the prisoners who were hired to the corporation by the Penitentiary Board. p. 165.

On an appeal from a judgment in behalf of the plaintiff, it was: *Held,* that it was error to exclude from evidence. the contract between the Penitentiary Board and the employer corporation, if any part of said contract should have been admissible. p. 166

If no error of law has been committed in the rulings of the trial court, the verdict of the jury—whether right or wrong, just or unjust, and even though in the very teeth of the evidence—can not be interfered with by the Court of Appeals, and can be set aside by the trial court only upon motion duly made. p. 167

*Decided March 2nd, 1916.*

Appeal from the Court of Common Pleas of Baltimore City. (DAWKINS, J.)

Charles Hawkins, a prisoner in the State Penitentiary, was injured while engaged in the manufacture of clay products by a corporation with whom the State of Maryland had entered into an agreement allowing it to employ the prisoners in the penitentiary, under rates and conditions therein set forth; he brought suit therefor, in the Court of Common Pleas for $10,000, against the employer corporation. Judgment being in favor of the plaintiff for the sum of $6,000 this appeal was taken.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*George Whitelock* and *John B. Deming* (with a brief by *Whitelock, Deming & Kemp*), for the appellant.

*James J. Lindsay*, for the appellee.

BURKE, J., delivered the opinion of the Court.

This is the defendant's appeal from a judgment rendered against it in the Court of Common Pleas of Baltimore City. The defendant is a manufacturer of commercial hollow iron ware, and under a contract with the Board of Directors of the Maryland Penitentiary it had installed its plant within the walls of the institution and was using convict labor in the operation of its machinery. At the time of suffering the injury for which damages are sued for in this case, the plaintiff was a convict and was serving a term in the Maryland Penitentiary under a judgment of the Criminal Court of Baltimore. He was assigned by the authorities of the institution to work for the defendant.

On May 28, 1914, while at work at the mills of the defendant he was seriously injured. The declaration alleged: "That during the early part of the year nineteen hundred and fourteen the plaintiff, under orders of the officials of the penitentiary and by request of the defendant's officers and agents, was transferred to one of said mills of the defendant, where the work he was called upon and required to do, among other things, was the operation of certain power machinery by means of a short shift lever which was so negligently constructed that the plaintiff was required to stand upon a board or platform and reach upward, over rapidly revolving wheels and dangerous machinery in order to carry out his instructions and perform his allotted task; that the plaintiff complained frequently, both to the penitentiary officials and the defendant's agents and officers as to the danger in operating the machinery because of the insufficiency of the length of the shift lever and the indifferent manner in which it had been constructed, but it was not remedied and, while it was in this condition, the plaintiff, while exercising due care and caution, and on or about the 28th day of May, 1914, in operating said lever was caught by a pulley chain in close proximity and forming part of said machinery, and forcibly and violently drawn rapidly upwards among the pulleys and shafting in the mill; that as a result of the indifference and negligence of the defendants, its agents, servants and employees in permitting their machinery and the said lever to be and remain in an unsafe condition, the plaintiff, in being drawn into the pulleys and shafting had his right arm pulled completely out of place, his body was bruised and mangled and he was carried to the hospital in the penitentiary where, for more than three weeks he suffered the most agonizing pain and on being discharged from the hospital, at the expiration of three weeks, the agents, officers and servants of the defendants required the plaintiff to again resume work in their mills and when he was compelled to do so would, through his efforts to perform his allotted task, suffer the entire night following in his cell from pain and

misery; that the plaintiff while exercising all possible care and caution on his part, has, through the carelessness and negligence of the defendants, its agents, officers and servants suffered a permanent wrong and injury and the pain and agony which the plaintiff suffered at the time of the injury and continuously since then has resulted in the permanent injury and damage of the plaintiff." At the conclusion of the whole case the Court granted three prayers on behalf of the plaintiff and two on behalf of the defendant. The plaintiff's third prayer was the usual one on the measure of damages and is free from objection.

We here transcribe his first and second prayers:

"The plaintiff prays the Court to instruct the jury that if they shall believe from the evidence, in this case, that the plaintiff was a convict, duly committed to the penitentiary of the State of Maryland, at the time he received the injury complained of, and that as such convict, he had been assinged to operate and manage the machines in question, and was compelled and required by the exercise of authority upon him to obey such assignment, and that in the pursuance of his duties, it was necessary for him to stand upon the board or platform between the machines in question in order to start or stop them, then the plaintiff would not be guilty of contributory negligence in standing upon said board or platform between said machines in the ordinary and usual performance of his duties to operate the same.

"The plaintiff prays the Court to instruct the jury, that it was the duty of the defendant, The Jones Hollow Ware Company, to use ordinary care and diligence to provide the employed with reasonably safe and proper machinery and equipment to do and perform the work required of such employed, and not to expose such employed to unnecessary and unreasonable risk and danger during such employment, and if the jury find from the evidence in this case that the lever used in operating the machines in question was not of proper length, and if they shall further find from the evidence that the accident resulting in the injury to the plaintiff Hawkins

(if they find he was injured), occurred by reason of the improper length of said lever, which could have been discovered and remedied by the defendant previous to the accident, by the use of ordinary care and diligence in the lengthening of said lever, or, if they shall find that the said accident happened by reason of *an* such construction of said lever for the operation of said machines, and shall further find that the plaintiff was in the usual, ordinary and proper discharge of his duties as the operator of said machines, when injured, then their verdict must be for the plaintiff."

The defendant's granted prayers are as follows:

"The Court instructs the jury that they can not find for the plaintiff unless they find: 1. That he was at the time of the accident using due and ordinary care such as an ordinarily careful and prudent man would use under similar circumstances; and, 2. That the defendant was guilty of some act of negligence on its part which directly contributed to the happening of the accident mentioned in the declaration and the evidence."

"Even if the jury find from the evidence that under the circumstances of the case the defendant was negligent, yet if they further find that the accident mentioned in the declaration and the evidence was caused by any negligence or want of reasonable care on the part of the plaintiff at the time of the accident directly contributing thereto, and that except for the want of such care and caution the injury would not have been sustained, the plaintiff can not recover."

The testimony in the record is most conflicting upon vital questions of fact. But the determination of these questions was for the jury,—they alone had the exclusive right and power to judge of the credibility of witness and decide upon the weight of the evidence. The plaintiff's evidence legally tended to support the case made by the declaration, and if believed by the jury they could have properly found for the plaintiff. The liability of the defendant for the injury, upon the evidence adduced for the plaintiff, is fixed by the principles announced in *Baltimore Boot Co.* v. *Jamar,* 93 Md.

404, and, notwithstanding the able effort of counsel for appellant in the brief and oral argument, we think the principles of that case are applicable to this, and that the two prayers of the plaintiff, quoted above, were properly granted.

The theory of the defendant was that the injury was due to the plaintiff's own negligence in getting upon the board or platform mentioned in the declaration and in the evidence for the purpose of moving the lever by which the power was applied to the machinery,—that it was dangerous and wholly unnecessary for him to have assumed that perilous position,— that he could have, with perfect safety to himself, stood upon the floor of the basement in which the mills were located and reached the lever and applied the power. A great deal of conflicting testimony was offered upon this point, and the jury, after inspecting the premises, decided the question against the contention of the defendant.

We find no merit in any of the exceptions. The first and second exceptions were taken during the examination of the witness William Hopkins. Before these exceptions were taken the witness had been asked and answered the following question: "Q. If you want to shut off the operation, or start up the operation of Hawkins' mills, what did you do? A. You had to get between the two mills and get up on a little platform, an ordinary piece of board, and reach up and turn them off or on." The witness was then asked these questions and gave the following answers: "Q. How did he start the operation or stop the operation of the mill? A. He had to get up between the two mills on a little platform, a piece of board and reach up and catch hold of the lever, which was just a short lever. Q. With what hand? A. Use his left hand." This evidence had, as we have seen, in substance gone to the jury without objection before the exceptions were reserved. This witness operated three mills in the basement in close proximity to those operated by the plaintiff. He was familiar with the conditions, and knew what was necessary to be done to apply the power. He further

said, that he was taller than the plaintiff, and that he had tried to reach Hawkins' lever from the ground and was unable to do it. We do not think there can be any doubt as to the admissibility of this evidence.

The third and fourth exceptions were taken to the admission of the contract between the Board of Directors of the Maryland Penitentiary and the defendant. Under the *Jamar case* some portions of this contract were certainly admissible. The objection was a *general one,* and was properly overruled.

There was no injury in the ruling embraced in the fifth exception, as the defendant got the benefit of the testimony objected to in the subsequent part of the evidence given by Doctor Schwartz. Nor do we find any injurious error in the sixth exception. As to the seventh exception, there can be no doubt that the plaintiff was seriously injured. This was testified to by two physicians,—one called for the plaintiff and the other for the defendant,—and Doctor Chambers, who examined the plaintiff before the trial, upon an order of the Court, at the instance of the defendant, was not put upon the stand, and, therefore, it might be said that the seriousness of the plaintiff's injury was a practical concessum in the case. We can not say that the refusal of the Court to permit Charles F. Snow, a deputy keeper in the Maryland Penitentiary to say what the injuries to the plaintiff appeared to be resulted in any injury to the defendant.

It follows from the views we have expressed that the prayers by which the defendant sought to withdraw the case from the jury were properly refused. Counsel for the appellant in this Court,—and no doubt in the Court below,—made a vigorous attack upon the credibility of the plaintiff and his witnesses. But that is a matter which we can not decide. It may be that the verdict should have been for the defendant upon the evidence, but we have no power to weigh the evidence or to determine its weight and sufficiency in fact to support the plaintiff's case.

It was said in *Hiss* v. *Weik,* 78 Md. 439, that, "as an appellate Court we can not review the findings of the jury upon matters of fact, nor can we pass upon the comparative weight of the conflicting evidence submitted to them. If no error of law has been committed by the inferior Court in any of its rulings, the verdict of the jury, whether right or wrong, just or unjust, and even though it be directly against and in the very teeth and face of the preponderance of the evidence, can not be interfered with here; and there is no power lodged elsewhere to set aside the verdict, except with the Judge before whom the case was tried below."

The instructions granted submitted every question in the case clearly and fully to the jury. The defense upon which the defendant relied to defeat the action, in clear and simple language, was submitted to and rejected by the jury, and finding no error of law in any of the rulings of the lower Court we will affirm the judgment.

> *Judgment affirmed, the appellant to pay the costs.*