JOSEPH H. ROBERT *v.* ELIZABETH WELLS.

[No. 15, April Term, 1936.]

*Decided May 18th, 1936.*

The cause was argued before BOND, C. J., URNER, OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*W. Clinton McSherry*, with whom were *Robert E. Clapp, Jr.*, and *D. Eugene Walsh*, on the brief, for the appellant.

*F. Waters Trapnell* and *James E. Boylan, Jr.*, for the appellee.

JOHNSON, J., delivered the opinion of the Court.

The appeal in this case is taken by Joseph H. Robert from a judgment entered against him by the Circuit Court for Carroll County upon the verdict of a jury in an action of tort in favor of Elizabeth Wells. In her declaration, it is alleged "that, on the night of December 27th, 1934, at or about 9:00 p. m., while the plaintiff was riding as a passenger in an automobile being operated westerly on Frederick Avenue, near the intersection of Glenwood Avenue, both public highways in Catonsville, Baltimore County, State of Maryland, she sustained serious injuries when the automobile in which she was riding collided with the defendant's truck, which the defendant had left standing on the traveled portion of Frederick Avenue, so as to obstruct traffic, without displaying any lights or any warning whatsoever; as the result thereof the said plaintiff sustained injuries to her head, body and limbs, suffered great pain and mental anguish and other great and permanent wrongs."

The sole exception in the record was taken by appellant to the action of the trial court in its rulings upon the prayers, the first and fourth of which were granted as offered by the plaintiff, while appellant's first and second were rejected. Both of these rejected prayers sought an instructed verdict in his favor, the first upon the ground that no legally sufficient evidence had been offered to entitle the plaintiff to recover, and the second, because of an alleged nonexistence of evidence legally sufficient

to establish any negligence on the part of the defendant directly contributing to the accident.

The injuries for which appellee sought recovery occurred on December 27th, 1934, between 8 and 9 o'clock p. m. on Frederick Avenue at Catonsville, in newly annexed territory of Baltimore City. Frederick Avenue runs approximately east and west, and its width, from north to south curb, is 44.1 feet. On the southerly side thereof is a space 14.3 feet wide used for vehicular traffic, while the northerly side, 14.4 feet in width, is devoted to a similar purpose, the remaining or center portion being taken up by two railway tracks of the Baltimore Transit Company.

Appellee's injuries occurred in the northerly lane above described at a point from twenty-five to sixty feet west of the intersection of the north line of Frederick Avenue with the east line of Glenwood Avenue, when an automobile in which she and others were riding in a westerly direction came in contact with a parked truck, also facing west.

Appellee offered testimony which, if accepted by the jury as true, justified a finding that at the time and place mentioned she was riding in her husband's automobile, accompanied by the husband, who was its driver, a friend of his and five children, the latter of whom occupied the rear seat, while the three adults remained upon the front seat. It was dark and although not raining the condition of the weather was hazy, and according to some of her witnesses, slightly misty. They had passed through Catonsville, and while proceeding at a rate of speed from twenty to twenty-five miles an hour, they suddenly saw in their path a parked truck, upon which there was at least no rear light, nor at that time were there any other lights which they observed. This truck, which was loaded, had a covering of dark canvas, and was not parked parallel to the north curb of Frederick Avenue, for while its right front wheel was within one or two feet of the curb, its right rear wheel was as much as four feet from the curb, making the rear of the truck extend considerably

in the northerly traffic lane down which the Wells car was being driven. Just before seeing the truck, plaintiff and her companions met an automobile which was being driven easterly and equipped with very bright headlights that for the moment prevented the driver of the Wells car from having a clear view ahead, but he immediately slowed down *(Williams v. State,* 161 Md. 39, 155 A. 339), and those occupying the front seat did not observe the parked truck until within from five to ten feet of it. Concerning this, the witness Woodland, who, with Mr. and Mrs. Wells, occupied the front seat of the Wells car, testified:

"There were some cars coming, they were coming east on Frederick Avenue. All of a sudden I seen a shadow, I seen this truck parked there with a canvas, and when I seen it it was about ten feet, I imagine, somewheres around there—about as far as from here to the end of the table (indicating), about ten feet; and then I didn't know nothing else. Then I seen Mr. Wells, he turned his wheel, but he couldn't miss it because he was too close, and then I didn't know anything until after he hit. When he hit I got out some way, I don't know how I got out because I was right at the door and that got mashed to pieces, and the radio came up against my legs. I don't see how I ever—so, I got out and I asked this man, I said, 'who was driving the truck?' I didn't know what I was doing because I was bleeding here and here and my hand and I didn't know what I was doing; and that is when I asked this man who was driving the truck, and I didn't know hardly what I was doing, evidently, because that was bleeding so bad. I was kind of scared, you see; and that is all I know about it. There was cars coming east, you see, and it was bright; you couldn't see very good.

"Q. Did Mr. Wells change his speed any when he saw those cars blinding him? A. Sure. He was going out there a little faster, and he got to the speed limit and then he slowed down, as anybody should.

"Q. He slowed down when he saw the cars. A. As soon as he got to the Catonsville limit he slowed down.

"Q. These cars approaching, were they on their own side of the road? Did they cross the center line of Frederick Road at all? A. Around the center of the road, coming east.

"Q. Did they force Mr. Wells over any, or was he continuing as usual? A. He was driving the way anybody should, about—I imagine about two foot from the right hand side. I mean, on the north side of the road from the car track. That is the way I think anybody should drive.

"Q. When you saw this truck did you get a good view of it? Could you see as well as the lighting conditions permitted? A. Yes, sir; I could see it was something dark, but we were too close; and I could see it didn't have any light on it. If it had a light on it the canvas must have been over it or the tail gate. You could not see no light nowhere on it.

"Q. Was it parked close in against the curb? A. No, sir. The front wheel was about a foot—it wasn't—about a foot from the front wheel, I guess, but the rear wheel was about four feet off. It was on an angle, you see. The truck was parked like that and he was going in—he was going west on Frederick Avenue, and when I seen it he swung the car and we was right into—the front sticking out across the car track when I got out."

The north side of Frederick Avenue, where the accident occurred, was unlighted, but when the driver realized the presence of the parked truck, he cut to his left in an effort to avoid contacting it, but was too near it to accomplish this purpose, and his car struck the left rear corner of the tailboard of the truck, which board was so adjusted as to form an extension of the truck floor. As a result of this contract, the plaintiff sustained serious and painful injuries, from some of which, even at the date of trial, she was still suffering.

The defendant offered testimony from which the jury could have found that on the day of the accident he had

been to Baltimore on business and was accompanied by
Ira G. Nuss. After there loading his truck, he met his
companion on South Schroeder Street about 8 p. m., and
they started out Frederick Avenue intending to return
to their homes in Frederick. They stopped at Irvington,
where appellant got refreshments, and inspected the
lights on his truck and found them all working. This was
but a few minutes drive from the scene of the accident,
and about the time they were passing through Catons-
ville his engine failed to function properly, causing him
to park the truck near the north curb of Frederick Avenue
to ascertain the trouble. Although his right front wheel
was near the curb, his left rear wheel was two feet to
the south of it. He again inspected his lights and found
all properly working, but discovered his vacuum tank
was empty, and started across Frederick Avenue for gas-
oline, but before reaching the station, and while within
the beam of his own headlights, he heard a crash and
discovered his truck had been struck by the Wells car.
He immediately returned to the truck, examined the rear
light, which had been "smashed up" by the collision, yet
the filaments, until recently within its bulb, were still
red hot.

Much of the testimony offered by the defendant was
in direct conflict with that of the plaintiff, but if there
existed evidence legally sufficient to take the case to the
jury, its weight and credibility were exclusively matters
for the jury to pass upon. *Lyon v. Townsend,* 124 Md. 163,
91 A. 704; *Jones Hollow Ware Co. v. Hawkins,* 128 Md.
160, 97 A. 365; *Grant v. Kotwall,* 133 Md. 573, 105 A. 758;
*Kauffman Construction Co. v. Griffith,* 154 Md. 55, 139 A.
548; *Kroh v. Rosenberg,* 158 Md. 273, 277, 148 A. 244;
*Washington Ry. & Elec. Co. v. Anderson,* 168 Md. 224,
228, 177 A. 282.

Great divergence of opinion is noted in the authorities
with reference to the duty of a motorist when approach-
ing at night an unlighted obstruction upon a highway,
and in England the decisions uniformly hold to what is
known as the "drive within the radius of your lights

rule," which, as observed in *Law Quarterly Review* for April, 1934, at page 160, requires that "one driving an automobile at night must, under all circumstances and as a matter of law, see whatever obstructions are within the radius of his front lights, and that he must operate his car at such speed and have such control over it that he can stop it before striking the obstruction," and, failing in this duty, he is guilty of contributory negligence as a matter of law.

While this rule has been followed in some cases in America, notably in that of *Stone v. Mullen,* 257 Mass. 344, 153 N. E. 565, American courts have, for the most part, held that under many circumstances the determination as to whether the driver should have seen the obstruction is a jury question, for, as said by the court in *Morehouse v. City of Everett,* 141 Wash. 399, 252 P. 157, 160, 58 A. L. R. 1482, in rejecting the English doctrine, "The rule contended for is, in our opinion, entirely too broad, and, if put in effect, would have very serious and unjust results. It loses sight of the fact that one driving at night has, at least, some right to assume that the road ahead of him is safe for travel, unless dangers therein are indicated by the presence of red lights; it does not take into consideration the fact that visibility is different in different atmospheres, and that at one time an object may appear to be one hundred feet away, while at another time it will seem to be but half that distance."

In 2 *Blashfield, Cyclopedia of Automobile Law and Practice* (Perm. Ed.) Part 8, sec. 1203, it is stated:

"Irrespective of statute or ordinance, the exercise of ordinary care by a motorist, who parks his car or permits it to stand in the street at night or when vision is obstructed from any cause, to protect himself and others from injury, will frequently, if not usually, require him to place lights on the car. The fact that, if the driver had not had to make repairs on his car, he would not have needed lights, is no excuse for a failure to have lights on a vehicle stopped in the highway.

"A driver who collides with an unlighted vehicle is

not contributorily negligent for failing to have on his brightest lights when the lights he was using were ordinarily adequate under the circumstances. A motorist may assume that no vehicle will be left standing on the main highway at night without a warning light.

"A failure to place lights on a standing vehicle is not material if an approaching motorist, claiming to have been damaged by reason of the presence of the standing car, was able to see it, and did see it, in time to stop before reaching it.

"Under appropriate circumstances it may be for the jury to say whether the failure to provide adequate lights is negligence."

For a partial list of cases holding it negligent to leave parked in a public highway a motor vehicle without lights visible from the rear, see Annotation, 92 *A. L. R.* 691; *Wall v. Cotton,* 22 Ala. App. 343, 115 So. 690; *Page v. Neiland,* 40 Ohio App. 141, 178 N. E. 710; *Jacobs v. Moniz,* 288 Mass. 102, 192 N. E. 515; *Walker v. Kroger Grocery & Baking Co.,* 214 Wis. 519, 252 N. W. 721, 92 A. L. R. 680; *Willis v. San Bernardino Lumber & Box Co.,* 82 Cal. App. 751, 256 P. 224; *Sawdey v. Producer's Milk Co.,* 107 Cal. App. 467, 290 P. 684.

The trend of Maryland decisions would seem to harmonize with the prevailing American doctrine, for in *Frederick & Balto. Transportation Co. v. Mumford,* 154 Md. 8, 139 A. 541, it was held that to leave a truck standing on the side of a much used highway for half an hour on a dark and rainy night without a rear light justified a finding of negligence. Likewise in *Miles v. Webb,* 162 Md. 269, 272, 159 A. 782, this court held, in an action for injuries received when plaintiff's automobile collided with the rear end of defendant's truck left standing after dark in a public highway with no light visible from the rear, that this made out a *prima facie* case of negligence. See, also, *Caroline County v. Beulah,* 153 Md. 221, 228, 138 A. 25.

In view of these authorities, we must hold that appellant's first and second prayers were properly rejected.

Nor was there error committed in granting appellee's first prayer, by which the jury was instructed that, if they found "from the evidence that on or about the 27th day of December, 1934, the plaintiff was injured when the automobile in which she was riding collided with the truck of the defendant, and that said truck had been left standing on the traveled portion of Frederick Avenue so as to obstruct traffic, without displaying any lights or any warning signals, if the jury so find, and that the plaintiff's injury resulted directly from the want of ordinary care and prudence on the part of the defendant, and not from the want of ordinary care and prudence on the part of the plaintiff directly contributing to the accident," their verdict must be for the plaintiff, as, after a careful examination, we are convinced that the prayer does not violate the rule against improper segregation of facts. It submitted to the jury to find whether the plaintiff was injured when the automobile in which she rode collided with the defendant's truck which had been left standing on Frederick Avenue, so as to obstruct traffic and without displaying lights or warning signals, which was the only negligence alleged and supported by testimony, and, if they found these facts, required a further finding that her injuries so occasioned resulted directly from the want of ordinary care on the part of the defendant and not from want of such care on the part of the plaintiff directly contributing to the accident, and in our judgment stated a correct proposition of law under the evidence in the case. The sole issue was the negligence *vel non* of appellant in thus leaving his truck parked without a rear light, and before the jury could find for plaintiff, it required a finding of such negligence, and also that she at the time was using due care. It withdrew from the jury's consideration no facts forming evidence in the case. Furthermore the granted fourth, fifth, sixth, and seventh prayers of the defendant so fully complemented the plaintiff's first prayer that the case went to the jury with the question of negligence *vel non* from the respective standpoints of the plaintiff and defendant most fully

and adequately presented. *Balto. & O. R. Co. v. State, use of Carbone,* 169 Md. 345, 181 A. 830, 835; *Goodman v. Saperstein,* 115 Md. 678, 684, 81 A. 695; *Turner v. Eagan,* 116 Md. 35, 37, 81 A. 877; *Dolby v. Laramore,* 121 Md. 618, 624, 89 A. 442; *Whisner v. Whisner,* 122 Md. 195; 207, 89 A. 393; *Bluthenthal & Bickart v. May Advertising Co.,* 127 Md. 277, 96 A. 434; *Balto. & O. R. Co. v. Engle,* 149 Md. 152, 161, 131 A. 151; *Caroline County v. Beulah,* 153 Md. 221, 228, 138 A. 25.

We are not unmindful that appellant offered testimony which, if believed, tended to prove that the rear light of the truck was burning or, if not, that its failing to burn was not known to him or discoverable by him by the exercise of reasonable care and caution, but the conflicting testimony on the part of the plaintiff, when considered in connection with the circumstances, make the controversy of fact an issue which is for the jury, whose province is to pass upon the credibility of the witnesses in this respect.

The plaintiff's fourth prayer was an instruction merely as to the measure of damages, provided the jury found in her favor, and the principle which it announces has been approved in numerous decisions of this court. No error is found in this ruling. *McCall's Ferry Co. v. Price,* 108 Md. 96, 69 A. 832; *Bernheimer Bros. v. Bager,* 108 Md. 551, 70 A. 91; *Howard County v. Pindell,* 119 Md. 69, 85 A. 1041; *Epstein v. Ruppert,* 129 Md. 432, 99 A. 685; *Washington & Rockville R. Co. v. Sullivan,* 136 Md. 202, 110 A. 478; *Brown v. Patterson,* 141 Md. 293, 298, 118 A. 653; *East Baltimore Transfer Co. v. Goeb,* 140 Md. 534, 118 A. 74; *Washington Ry. & Elec. Co. v. Anderson,* 168 Md. 224, 229, 177 A. 282.

*Judgment affirmed, with costs to appellee.*