JOSEPH WEARE & wife *vs.* INHABITANTS OF FITCHBURG.

At the trial of an action, under the Gen. Sts. *c.* 44, § 22, against a town to recover for injuries occasioned by a defect in a street which the defendants were bound to keep in repair, it appeared that for two or three years there had been, within the limits of the street, as laid out, a smooth and hard sidewalk, four feet wide and a quarter of a mile long, about on a level with the carriageway, and separated and distinguishable from it only by a shallow gutter; that much of the foot travel, and in wet weather all, had been on the sidewalk; and that the alleged defect was therein; but it did not appear that the sidewalk was laid out or repaired by the defendants. *Held,* that it was erroneous for the judge to rule that as matter of law the sidewalk was not a part of the street which the defendants were bound to keep in repair.

At the trial of an action, under the Gen. Sts. *c.* 44, § 22, against a town, to recover for injuries occasioned by falling, on a dark night, over a stone which had been for several months on the sidewalk near the plaintiff's house, the plaintiff testified that, while at the next door neighbor's, she learned that her children were in danger; that she ran towards home and fell over the stone; that she did not run as fast as if in the daytime; that she kept as near the middle of the sidewalk as possible, for fear of the fence along its edge; and that she had known of the stone being there, but at the time was not thinking of it, but was thinking only of her children and of not running into the fence. *Held,* that this testimony would warrant the jury in finding that she was in the exercise of due care.

TORT, under the Gen. Sts. *c.* 44, § 22, by Joseph Weare and Augusta A. Weare, his wife, to recover for personal injuries to her, alleged to have been occasioned by a defect in Milk Street in Fitchburg, on which she was travelling, and which the defendants were bound to keep in repair. Writ dated July 11, 1871. Trial in the Superior Court, before *Devens,* J., who made a report of the case for the determination of this court, of which the material parts were as follows:

"It was admitted that Milk Street was a way the defendants were obliged to maintain. It appeared from the plaintiff's evidence that Milk Street was laid out thirty-three feet wide; that the middle of the road was prepared and wrought by the defendants for a carriageway; that on the westerly side there was a slight depression or hollowing out of the earth, which served as a watercourse or gutter; that between this watercourse and the westerly line of the street there was, and had been ever since 1867, a smooth, level footpath, about four feet in width, which was, and had been since 1867, used wholly by the foot travel in wet and muddy travelling, while in dry weather the foot travel

was substantially divided between the edge of the carriageway and the footpath, both being travelled by foot passengers indiscriminately ; that this footway was about on a level with the carriageway, and was separated from it only by the narrow watercourse or slight depression, was worn hard and smooth by foot travel, and extended westerly to the line of the street for nearly a quarter of a mile ; that a portion of the way the grass had grown on each side of this path, and opposite some of the abutters the way was not so smooth as at other places ; that the street was wrought for travel, and on the edge of the carriageway met the gutter or depression ; that it was safe and convenient for foot passengers, and had become hard and smooth by such travel upon foot ; that there was a large amount of foot travel on Milk Street, that it was near the central and populous part of the town of Fitchburg ; and that there was nothing to distinguish the footpath from the carriageway but the watercourse or depression aforesaid.

" There was evidence that from time to time repairs had been made upon this footway, but there was no evidence that the defendants had constructed, wrought or repaired the same, and it was admitted that it was not laid out by the defendants as a sidewalk, in conformity with the provisions of the St. of 1869, *c*. 427, which provisions, it was admitted, had been adopted by the defendants.

" It also appeared that at the time of the accident there was in Fitchburg a large quantity of brick and concrete sidewalk constructed under the provisions of the St. of 1869, *c*. 427, of which one half of the expense had been borne by the abutters, in accordance with the provisions of the statute and the votes of the town ; that no petition for a sidewalk upon Milk Street was ever presented to the town authorities ; and that the obstruction which occasioned the injury, and which was the defect complained of, was a large stone which had been placed on this footway nearly a year previous to the accident.

" Upon this state of the evidence, the judge ruled that the plaintiffs could not maintain their action, on the ground that the place where the injury happened was not a part of the street that

the defendants were bound to keep in repair; ordered a verdict for the defendants; and reported the case for revision of the Supreme Judicial Court, that the verdict may stand, or be set aside and a new trial ordered, as that court may direct."

*P. E. Aldrich & C. H. B. Snow,* for the plaintiffs.

*G. A. Torrey,* for the defendants, cited *Howard* v. *North Bridgewater,* 16 Pick. 189; *Bacon* v. *Boston,* 3 Cush. 174; *Kellogg* v. *Northampton,* 4 Gray, 65; *S. C.* 8 Gray, 504; *Macomber* .v. *Taunton,* 100 Mass. 255; Gen. Sts. *c.* 45, § 6; St. 1869, *c.* 427.

AMES, J. It was admitted at the trial that Milk Street was a way which the town was obliged to maintain and keep in repair. The facts as presented by the plaintiffs were substantially these, namely, that within the limits of the way, as laid out, was a smooth, level sidewalk, about four feet in width, for the extent of about a quarter of a mile, separated from the carriageway only by a narrow watercourse or gutter, and about on a level with the carriageway; that this sidewalk was worn hard and smooth by foot travel, and was only distinguishable from the carriageway by the watercourse, or slight depression, that served as a gutter; that there was a large amount of travel by foot passengers in the street and over the sidewalk; that when the road was wet and muddy, the whole of the foot travel was upon the sidewalk; and that this state of things had lasted ever since the year 1867. It did not appear that this footway had been constructed or repaired by the town, and it was admitted that it was not laid out by the town in conformity with the provisions of the St. of 1869, *c.* 427, a statute specially applicable to and accepted by the town of Fitchburg. No question of due care on the part of Mrs. Weare was raised at the trial; and the case as she presents it is that she sustained injury by reason of a defect or obstruction upon this footpath, within the limits of the way as laid out.

In this state of facts, it was a mistake to rule, as a matter of law, that the place where the injury happened was not a part of the street which the town was bound to keep in repair, and that the defendants for that reason were entitled to a verdict. Upon the evidence offered, the plaintiffs might have contended, and the jury might have found, that the place where the accident hap-

pened was, to all appearance, as much a part of the highway as the carriage track was. It was a question for the jury, whether the footpath was not so connected with the wrought part of the road, or with the carriageway, and so used for travel, as to make the town liable for its condition. From the length of time that this state of things had continued, and from the public notoriety of the fact, the jury might have found that this footpath, by long continued public use, with the knowledge and acquiescence of the town, was recognized as a part of the wrought and finished track. The defect or obstruction was not only within the apparent, but within the actual limits of the way. *Macomber* v. *Taunton*, 100 Mass. 255, does not conflict with this construction of the law. That was a case in which the alleged impediment to travel was a hitching post by the side of the carriageway, where by statute, Gen. Sts. *c*. 45, § 6, posts, trees or curbstones may lawfully be placed. There was no claim that the carriageway was thereby obstructed or narrowed; and the plaintiff, who in a very dark night had struck the post with the wheel of his wagon, was held to have no cause of action, on the ground that there was no defect. In *Howard* v. *North Bridgewater*, 16 Pick. 189, *Kellogg* v. *Northampton*, 4 Gray, 65, and other cases of the same class, it was held that a town would not be liable for defects and obstructions within the bounds of the way as laid out, but outside of the travelled path; but we understand the travelled path to be that which, with the knowledge and acquiescence of the town, is used for public travel, within the located limits of the way.

If the defendants had themselves constructed this sidewalk, they would of course have been responsible to keep it in repair. There may be on their part such an adoption of the acts of the adjoining landowner in constructing it, and such a long continued, public and notorious use and enjoyment of the improvement, when so made, as to amount to a recognition of it as a wrought and completed part of the way. And this would be a question of fact for the jury.          *Verdict set aside, and case to stand for trial.*

At the second trial of the case in 1873, in the Superior Court, after this decis'on, before *Pitman*, J., it appeared that the acci-

dent happened at nine o'clock in the evening; that there were no lamps upon Milk Street; that the plaintiffs' house was on that street; that while Mrs. Weare was visiting at a neighbor's house, on the same side of the street and a few rods off, she heard that a kerosene lamp in the room with her children was in danger of exploding; and that she started for home upon the sidewalk, fell over a stone thereon, which had been there some months, and of the existence of which she knew, and was injured.

The testimony of Mrs. Weare upon the question of due care was as follows: " I was at a neighbor's, next door, spending the evening. My little boy came running and said the lamp was going to explode. I went out. I kept on the sidewalk. It was a very dark night. I did not run as fast as if in the daytime. I came in contact with the stone. All the light was from the neighbor's where I was visiting, but none to direct me on my path on the sidewalk. I ran as soon as I stepped out of the door, but not as fast as in the daytime. I kept as near the middle of the sidewalk as possible for fear of the fence. I had known of the stone being there. My husband had said he was going to have it removed. I was not thinking of it at the time." Cross-examination: " I was accustomed to go on this footpath, and used to turn out towards the road to pass by the stone. As I went to the neighbor's that night, it was next my husband. I turned out as usual. I could not say the stone was there at that time. He guided me. In coming back, I did not think of the stone. I took no care to turn out for it. I had no thought of it. I thought only of my children and of not running into the fence. I tried to keep as near the middle of the sidewalk as I could. After I left the gate I was thinking about the fence. The fence was one continuous one, and I took care not to run against it." There was no other evidence upon the question of due care on the part of Mrs. Weare.

The defendants asked the judge to rule that there was no evidence that Mrs. Weare was in the exercise of due care; but the judge declined so to rule, and submitted the case, under instructions not otherwise objected to, to the jury, who returned a verdict for the plaintiffs. The defendants alleged exceptions, which were argued at October term 1873.

*G. A. Torrey*, for the defendants.

*P. E. Aldrich & C. H. B. Snow*, for the plaintiffs, were not called upon.

COLT, J. The case was submitted to the jury under general instructions which are not reported, and which must be presumed to have correctly stated the propositions upon which the plaintiffs' right to recover depended. The only question before us is, whether there was sufficient evidence of due care to warrant a verdict in their favor.

The testimony of the female plaintiff shows that while her thoughts at the time were mainly taken up with the danger which her children were in at home, she was to some degree attentive to the risk of injury to which she was herself exposed in passing over the walk in a dark night, and careful to direct her steps along the path with safety. She says she kept upon the walk as near the middle as possible for fear of the fence, and was not running as fast as if in the daytime, but that she did not think of the stone, which she had before known of, but only of her children and of not running into the fence.

We cannot say, as matter of law, that this shows conclusively that she was careless, or that there is no evidence tending to show the contrary. Previous knowledge of the existence of the defect, and a residence in its immediate neighborhood, are not conclusive against her. It is for the jury to determine, in view of all the circumstances, whether the care and circumspection used in any given case was such as ought reasonably to have been exercised by the traveller. The true rule has been applied in many recent cases. *Snow* v. *Housatonic Railroad Co.* 8 Allen, 441, 450. *Mayo* v. *Boston & Maine Railroad*, 104 Mass. 137, 142. *Whittaker* v. *West Boylston*, 97 Mass. 273. *Barton* v. *Springfield, ante,* 131. *George* v. *Haverhill, post,* 506. *West* v. *Lynn, post,* 514.

In the case of *Gilman* v. *Deerfield*, 15 Gray, 577, relied on by the defendants, the court declared that it was impossible to find on the facts reported that the plaintiff took the least possible degree of care to preserve or protect himself from the peril to which he was exposed, and that his testimony not only wholly failed to show

that there was the exercise of the degree of care which men of ordinary prudence use, but was equivalent to a positive declaration that he was utterly incautious and took no care of himself whatever. In this view of it, that case is clearly distinguishable from the one at bar, and there is no occasion now to question its accuracy. *Exceptions overruled.*