MARY ANN KELLY *vs.* INHABITANTS OF BLACKSTONE.

Worcester.    October 2, 1888. — October 18, 1888.

Present: MORTON, C. J., DEVENS, W. ALLEN, C. ALLEN, & KNOWLTON, JJ.

*Personal Injuries — Knowledge of Defect in Highway — Due Care.*

A woman sixty-nine years of age was returning home after dark from her daughter's house, to which she was in the habit of going, upon a footpath along the east side of a way. She knew there was a bad place in the path on that side, and usually went to and fro on the west side, but on this occasion she crossed to the east side because she heard persons approaching on the west side, and, while not thinking of the road, fell into a hole in the path and was injured. *Held*, in an action to recover for her injuries, that there was evidence of due care to be submitted to the jury.

TORT for personal injuries occasioned to the plaintiff by reason of the want of a railing at the side of a highway in

the defendant town. Trial in the Superior Court, before *Aldrich,* J., who allowed a bill of exceptions, which, so far as material, was as follows.

The only question was whether the plaintiff was in the exercise of due care at the time of the accident. Upon the easterly side of the way was a footpath about eighteen inches wide, unguarded by a railing, from which the land sloped sharply to the east. From this path, and down the slope, extended another footpath, which was so worn by travel and by the wash of water, that, at the point where it intersected with the path beside the way, there was a hole extending into that path for half its width.

The plaintiff testified that she was sixty-nine years old, and had lived for many years on the east side of the way, to the north of the place in question; that she had a married daughter, who had lived for several years on the west side of the way, to the south of the same place; that she had been in the habit of calling upon her daughter quite frequently, and had generally walked to and from her house; that she usually went upon the west side of the road, crossing it near her own house; that she called upon her daughter in the latter part of November, 1886, at about nightfall; that after it had become quite dark she started to return home alone; that she thought she heard the footsteps of persons approaching on the west side of the way; that she thereupon crossed over to the east side, and walked at a moderate pace towards her home along the path; and that after she had taken a few steps she fell into a hole or wash-out at the side of the road, and rolled down the slope, receiving the injury. In the course of a long cross-examination, she testified that the only reason why she usually went to and from her daughter's house on the west side of the way, was, that it was the most natural for her, and the most pleasant for her to walk on; that because of the bank on the east side she was afraid to go on that side; that she knew of the path on the east side, and of the bad place in it; that at the time she fell she did not think anything about that place, and was not looking for it; that she did not remember that she looked down at the ground as she walked along; that she had no recollection of seeing the place in the way, or of looking at it, or of thinking about it; and that the only reason she

had for crossing the road after she left her daughter's house was because she heard persons coming on the west side, and she crossed over so as to avoid meeting them.

The judge refused to rule, as requested by the defendant, that there was no evidence of due care on the part of the plaintiff. The jury returned a verdict for the plaintiff; and the defendant alleged exceptions.

*J. Hopkins*, (*F. N. Thayer* with him,) for the defendant.

*T. G. Kent & G. T. Dewey*, for the plaintiff.

DEVENS, J. The only question presented by the exceptions is whether there was sufficient evidence of due care on the part of the plaintiff to be submitted to the jury.

The plaintiff was walking on the east side of the highway, where there was a path about eighteen inches wide, suitable for travellers on foot, and at a slow or moderate pace. From this path another path descended the slope of the embankment from top to bottom, a distance of about sixteen feet; the travel down this latter path and the wash of water had so worn it that at its upper end it extended into and cut the path along the side of the way one half its width, creating a hole, as the plaintiff testified, into which she fell, and thence rolled down the slope. It was early in the evening, but quite dark, and the plaintiff was returning from her daughter's house, which was on the west side of the highway, to her own, which was on the easterly side. She did not usually walk on this side of the road, and had not done so in going to her daughter's house, being in the habit of crossing the highway, both going and returning, near her own house. On the evening of the accident, she crossed to the easterly side of the road, as she states, because she heard persons approaching on the west side of the road. She knew that there was a bad place made on the east side by the intersection of the path on that side with the path which descended the slope. Her testimony, which is all there was as to her knowledge of this defect, was given at great length in her cross-examination, which is fully reported, and is somewhat confused and confusing as to the extent of her knowledge of its exact character.

It certainly does not clearly appear thereby that she knew there was at that point "a wash-out at the side of the road," or "a hole," which are the terms she used in describing the place

into which she fell. Nor, even if she had full knowledge of the exact character of the defect, would it necessarily follow that she failed in the exercise of due care because she crossed to the easterly side of the road to avoid meeting strangers after nightfall, or because, as she states, she was not thinking about the road when she fell. A traveller may have his attention momentarily diverted from the defects in the way, even if known to him, and yet be in the exercise of due care.

In *Weare* v. *Fitchburg*, 110 Mass. 334, the plaintiff was called suddenly home, from the house of a neighbor where she was visiting, to attend her children, and, running along a footpath, struck against a large stone, which she knew to be therein, but of which she was not thinking at the time; and it was held that this was not conclusive evidence that she was careless, and that whether she was so or not was, under all the circumstances, to be decided by the jury.

In a similar way, in the case at bar, the anxiety which the plaintiff might have had in view of her age and her timidity as to the approaching strangers, together with the darkness of the night, the pace at which she was walking, and her knowledge of the defect, whether more or less, as it may have been found to be, were all to be considered in determining whether she had conducted herself with that care and circumspection which ought reasonably to have been exercised by her as a traveller, and the question was properly submitted to the jury. *Reed* v. *Northfield*, 13 Pick. 94. *George* v. *Haverhill*, 110 Mass. 506, 513. *Barton* v. *Springfield*, 110 Mass. 131. *Dewire* v. *Bailey*, 131 Mass. 169, 170.

The defendant considers the case of *Gilman* v. *Deerfield*, 15 Gray, 577, to be decisive in its favor. But in that case, as remarked by Mr. Justice Colt in *Weare* v. *Fitchburg, ubi supra*, " The court declared that it was impossible to find on the facts reported that the plaintiff took the least possible degree of care to preserve or protect himself from the peril to which he was exposed, and that his testimony not only wholly failed to show that there was the exercise of the degree of care which men of ordinary prudence use, but was equivalent to a positive declaration that he was utterly incautious, and took no care of himself whatever." In this view, the case at bar is clearly distinguishable from it.                    *Exceptions overruled.*