## COUNTY COMMISSIONERS OF CAROLINE COUNTY *v*. MILDRED S. BEULAH.

*Bill of Exceptions—Delay in Submission—Imputed Negligence —Infant in Parent's Custody—Dangerous High- way—Fallen Tree—Notice to County.*

An appeal will not be dismissed by reason of the failure to submit the bill of exceptions for the court's signature within the statutory time, if this was caused by the failure of the appellee's counsel to return the bill after its submission to them, in good time, for their examination.                    p. 223

In such a case it is immaterial that the appellant might have avoided any possibility of penalty for the delay by obtaining an extension of the time for submitting the bill of exceptions.                    p. 223

Whether the failure of county commissioners to remove before Sunday night a tree blown across the highway the previous Thursday, or to place a light thereon, constituted negligence, *held* to be for the jury, one of the commissioners being told of the tree Saturday night, and there being testimony that he was told thereof Friday afternoon.                    pp. 224, 225

One's negligence in driving an automobile was to be imputed to his child, six months old, injured while in the automobile, lying on its mother's lap.                    pp. 225-227

In an action by a child six months old on account of injuries received by it while in an automobile driven by its father, it was error to grant an instruction excluding consideration of negligence on the father's part as a possible bar to recovery, unless the father "recklessly and carelessly drove" the infant into a place which he knew to be dangerous, a mere lack of ordinary care on the father's part, if this contributed to cause the injury, being sufficient to bar recovery.                    p. 227

Whether one who had in the morning seen a tree which was blown across the road, was guilty of negligence in failing to

see it on his return on a foggy night over the same road, the evidence showing it to be above the level of his lights, or in failing to avoid a collision with it, although unseen, *held* for the jury.                                                    pp. 227, 228

That in driving over a road by day one saw a tree, which had fallen across the road, and consequently drove through a neighboring field, did not render him guilty of negligence in returning by night over the same road.                    p. 228

Defendant's prayer on the issue of contributory negligence in driving at night into a tree fallen across the road, *held* erroneous as improperly segregating, and so emphasizing, the demands which the fog and darkness made upon the driver for the exercise of care.                                        p. 228

In an action for injuries received by a child six months old, while in his father's care, instructions placing on plaintiff the burden of establishing a lack of contributory negligence on the father's part were properly refused.                    pp. 228, 229

In an action against county commissioners for injuries caused by a collision at night with a tree which had fallen across the road, an instruction that defendants would be liable only if they failed to remove the tree within a reasonable time after having received notice of its position, was properly refused, as failing to allow for plaintiff's contention that a light should have been placed on the tree if it could not be more promptly removed.
                                                            p. 229

*Decided June 8th, 1927.*

Appeal from the Circuit· Court for Talbot County (WICKES and KEATING, JJ.).

Action by Mildred S. Beulah, an infant, by her mother and next friend, Marion D. Beulah, against the County Commissioners of Caroline County. From a judgment for plaintiff in the sum of $500, defendants appeal.· Reversed.

The cause was argued before BOND, C. J., PATTISON, URNER, OFFUTT, PARKE, and SLOAN, JJ.

*Edward T. Miller* and *Wilbert L .Merriken,* with whom were *Merriken & Merriken* on the brief, for the appellants.

*J. Owen Knotts,* with whom were *W. Brewster Deen* and *Seth, Shehan & Marshall* on the brief, for the appellee.

BOND, C. J., delivered the opinion of the Court.

The appellee in this case has moved that the appeal be dismissed because of the appellants' failure to submit their bill of exceptions to the court, and have it signed, within the time allowed by law.   It appears, from affidavits filed in reply to the motion, that the delay beyond the proper time was caused by failure of appellee's counsel to return the bill after it had been submitted to them, in good time, for their examination.   They mislaid it, each felt assured that it was at the office of the other, and it was not found by either until the day on which it was signed.   This being the situation, the motion, founded as it is on delay of the moving party, should not be granted.  *McGonigal v. Plummer,* 30 Md. 426; *State v. Balto. & O. R. Co.,* 117 Md. 280, 289; *Stiegler v. Eureka Life Ins. Co.,* 146 Md. 629, 658.   It is true that the appellants might have avoided any penalty from the delay by obtaining an extension of the time, as the appellants might in two of the cases just cited, but the appellee can have no greater right to an advantage from the remissness of her own counsel because the appellants neglected a way of escape from its consequences.   The motion will be overruled for these reasons.

The suit is for the recovery of damages sustained by the infant plaintiff in a collision of an automobile, in which she was being driven, at night, by her father, with a tree which had been blown across the road in a storm.   The plaintiff recovered a judgment, and the defendants appeal from the rulings of the trial court on prayers for instructions.

The plaintiff was a colored child, six months old, living with her parents in Delaware, about a mile beyond the Maryland line, near Federalsburg, in Caroline County; and on

Saturday afternoon, August 15th, 1925, she was taken by her father and mother in an automobile to spend the night and Sunday with the mother's mother, beyond Federalsburg, near Vienna, Maryland. As the father drove the automobile along the Caroline County Road approaching Federalsburg, and a mile or a mile and a half from it, he found a tree, about two feet thick across the stump, fallen across the road, and drove around it through the neighboring field. The return journey started from the grandmother's house at about midnight, Sunday night; and, after a stop at Federalsburg to get ice, the father drove along toward home, failed to see the tree still lying across the road, and collided with it, so that the baby was badly injured.

There was testimony tending to prove that the storm which caused the tree to fall occurred on the preceding Thursday, and that several other trees in the neighborhood had been blown down by it. One of the county commissioners, Mr. Leonard Covey, living at Federalsburg, was told of this tree either on Friday afternoon or Saturday night. He clearly remembers having been told of it on Saturday night, and there is testimony of his having been told early on Friday afternoon, as he was passing along the street. There was no meeting of the board during those days, and the tree was not removed until Monday, after the accident. No light was placed on it in the meantime. Further testimony was that the road was an oyster shell road, and that the trunk of the tree rested on its branches from six to ten feet above the roadbed. The parents of the child testified that, as they drove along on that night, the way was obscured by patches of fog, as well as by the darkness, and that, although their headlights were lighted, they did not see the tree at all until they struck it. The windshield and top were struck, and it was the breaking of the windshield that caused the injuries to the baby. The speed of the car when it struck was about twenty miles an hour. The parents did not say definitely whether they drove with the expectation that the tree would

have been removed, whether they mistook its location, or whether they forgot it.

On this testimony, three main questions of law were presented to the trial court by the prayers for instructions: (1) Whether there was evidence legally sufficient to support a finding of negligence on the part of the county commissioners causing the accident; (2) whether negligence of the child's father, if such negligence should be found, would prevent recovery on behalf of the child, and, (3) if the father's negligence would prevent recovery, whether it was established beyond controversy, so that a verdict for the defendants should be directed because of it.

The prayers on both sides assume that the county commissioners would be responsible for injuries caused by a tree fallen across the road, if they had notice of the danger in time to take measures, in the exercise of ordinary care, to prevent accident from it—deferring for the present any question of contributory negligence. *Washington County v. Gaylor,* 140 Md. 375. To determine whether the commissioners were negligent it would be necessary to decide only the question of the sufficiency of the notice given them. The warning of one or two days testified to might, for all the court could say, be sufficient; whether it was or not was peculiarly a question for the jury, and one well within their knowledge. At least the court could not hold it insufficient beyond all controversy, and direct a verdict accordingly. It is true that one of the intervening days before the accident was Sunday, and not an ordinary work day, but the law does not forbid steps to be taken on Sunday to avoid injury on the highway, and how far, if at all, the fact might have given rise to practical difficulties, the jury should decide. Besides, the jury would also have to consider the testimony of notice given on Friday, and the practicability of taking preventive measures on Saturday. We think the trial court rightly refused the defendants' first and second prayers, which questioned the legal sufficiency of evidence to prove negligence on their part.

The questions whether contributory negligence of the

·child's father could affect the child's right of recovery, and, if it could, whether his negligence was so clearly established that a verdict should have been directed for the defendants because of it, are the chief subjects of controversy in the case.    Obviously, a child six months old takes no care for its own safety, and here the father, driving the car, had the movements of the child and the exercise of care for its safety altogether in his hands.    It is argued that, as the child lay on the mother's lap, it was in her custody and control and not in that of the father, but that is a distinction of no importance within the view of the principles to be considered; the question is whether negligence of one who had the child's safety in his care and control, of the only one to exercise care on its behalf if care was to be exercised, prevents recovery by the child.    There is a difference of opinion on that question among the courts of this country (see cases collected in a note, 15 *A. L. R.* 414) ; but it has long been settled in Maryland that the negligence of the custodian is · to be imputed to the child.    In *Baltimore City Pass. Ry. Co. v. McDonnell,* 43 Md. 534, 551, this Court said, "Whatever may have been the decisions elsewhere, in this state it is now well settled law, that if an injury results directly from the want of ordinary care and prudence on the part of the defendant or its agents, and not from the want of such care and prudence on the part of the plaintiff as ought, under all the circumstances, to have been expected from one of his age and intelligence, or from want of ordinary care and prudence on the part of· his parents, directly contributing to the accident, the plaintiff is entitled to recover."    And in *Cumberland v. Lottig,* 95 Md. 42, 48, the Court said : "The evidence of the infant plaintiff's mother showing, as we have said, that she recklessly and carelessly took him into a place of danger, there can be no recovery ; because if he was too young to know of the dangerous character of the wire his mother's negligence must be imputed to him, and if he was old enough to know better than to take hold of the wire his own negligence would be fatal to his case."    And see *United Railways v. Carneal,* 110 Md. 211, 231; *Zipus v. United*

*Railways,* 135 Md. 305; and *Wash., B. & A. Elec. R. Co.
v. State, use of Kolish,* 153 Md. 119. The defendants, in
five of their prayers, the fifth, seventh, eighth, ninth and
tenth, asked for instructions to the jury that the father's
negligence, if found, would be so imputed to the child, but
the prayers were refused; and we find the ruling erroneous.
The defense could probably have been presented in one
prayer, and the court might have rejected others as super-
fluous, but the instruction should have been given in one or
more.

An instruction asked by the plaintiff, and granted by the
court with a modification, also excluded consideration of
negligence on the father's part as a possible bar to recovery
by the child, but qualified that ruling by adding the pro-
viso: "unless the jury shall further find that the said George
R. Beulah (the father) recklessly and carelessly drove the
infant plaintiff into a place known by the said George R.
Beulah to be a place of danger." And the defendants asked,
and were granted, one instruction, among others, that there
could be no recovery if it should be found that the father
"recklessly and carelessly" drove into the tree. In the ex-
tract quoted above from the case of *Cumberland v. Lottig,*
this Court remarked that the evidence showed that the in-
jured infant's mother "recklessly and carelessly took him
into a place of danger," but the Court, in that remark, was
not announcing or applying any rule other than that of
ordinary care. The one principle to be applied, and the
one applied in that case, is that if the custodian is guilty of
a failure to exercise ordinary care which contributes to bring
about the child's injury, that lack of care prevents recovery
on the child's behalf. The instruction granted for the plain-
tiff, and marked 2A, and that granted for the defendants,
marked 4th, both referred to an erroneous test.

The request of the defendants, in their third prayer, that
the jury be directed to return a verdict for the defendants
because the evidence established contributory negligence on
the father's part, we think was properly refused. Whether

the father would, in the exercise of ordinary care, have seen the tree as he came to it in the dark, above the level of his lights, as the testimony places it, is a practical question of fact which the court could not decide; a jury might think not. And if the jury should conclude that the man might miss seeing it when driving toward it with ordinary care, then contributory negligence must be found, if at all, in some lack of effort to avoid collision with the unseen tree, in failing to anticipate the possibility that it would still be lying across the road, invisible to him, in failing to fix its location correctly, and in failing to take special care on reaching the site, or to drive generally so as to avoid collision whenever he might reach it. The mere fact of his returning over the same road does not, of course, furnish evidence of negligence; it was his right to use the road, even if there had been another one which he might have used, and the record does not inform us whether there was another road or not. *Kent County v. Pardee,* 151 Md. 68; *Vannort v. Chestertown,* 132 Md. 685; *Allegany County v. Broadwaters,* 69 Md. 533. In our opinion the court could not say that, beyond any reasonable question, a man driving along the road under the circumstances described would not have struck the tree if he had been using ordinary care. Possibly a jury might so conclude, but we cannot say they might not reasonably have concluded otherwise. The jury should judge the fact.

The appellants complain of other rulings on prayers for instructions which seem to require less discussion. An eleventh prayer of the defendants might be considered a superfluous prayer on the question of the father's contributory negligence; furthermore, it dwells especially on the demands which the fog and darkness made upon the driver for the exercise of care, and, we think, by segregating those demands, gave them an emphasis which the court should not give. A twelfth and a thirteenth prayer were properly refused because the instructions prayed by them would have cast upon the plaintiff the burden of establishing a lack of

contributory negligence on the father's part. *Balto. & O. R. Co. v. Stumpf,* 97 Md. 78, 90; *Hopper, McGaw & Co. v. Kelly,* 145 Md. 161, 170. A fifteenth prayer, for an instruction that if the tree was found to have been blown across the road without fault on the part of the defendants, then they would be liable in this action only if they failed to remove the tree within a reasonable time after having received notice of its position, was properly refused; it is contended that a light should have been placed on it, if it could not have been removed more promptly, and we think the instruction should have allowed for that contention. A sixteenth prayer asked an instruction that, from the facts that the father had been forced to drive around the tree during the day time on Saturday, and knew or could in the exercise of reasonable care have known that the tree was there, then his driving into it was contributory negligence which would prevent a recovery in this case. As has already been pointed out, we feel unable to say that driving into the tree at night, under the circumstances stated, establishes beyond any reasonable question that the driver was not driving with ordinary care.

> *Judgment reversed and new trial awarded, with costs to the appellants.*