## NEELY *v.* BREWER

[No. 117, October Term, 1949.]

*Decided March 10, 1950.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON and MARKELL, JJ.

*Estel C. Kelley,* with whom were *D. Lindley Sloan* and *Charles F. Wagaman* on the brief, for the appellant.

*William C. Walsh,* with whom were *Thomas B. Finan* and *Miles, Walsh, O'Brien & Morris* on the brief, for the appellee.

MARKELL, J., delivered the opinion of the Court.

This is an appeal from a judgment for defendant, entered *n. o. v.* after disagreement of the jury. Plaintiff

and her husband live in a house owned by her on Patterson Avenue in Cumberland. Between her house and the house of her neighbor, a Mr. Ruehl, is a 59 inch passageway, of which 30 inches is owned by her, the rest by the neighbor. Her part is paved with a cement walk, the rest is unpaved.

Defendant is a contractor, who in June 1947 covered the upper part of the Ruehl house with shingles. The whole work, on the four sides of the house was begun on June 3rd and "practically finished" on June 6th. On the side next to plaintiff's house the work was done on June 4th and 5th. To do the work ladders were set against the house, which with planks on the tops and brackets formed a scaffolding on which defendant's employees worked. On June 3rd one of defendant's employees asked and obtained permission from plaintiff's husband to work in the passageway. On the morning of June 4th three ladders, and the scaffolding on them, were set up and secured against the Ruehl house, with the bottoms (plaintiff says) against her house. Plaintiff's kitchen door opens on the passageway, 9 feet from the back of the house. Two of the ladders were between the kitchen door and Patterson Avenue, the third back of the kitchen door. Plaintiff estimates it was five feet from the door, but says she does not know.

Plaintiff's husband is a bus driver. He gets up at 4:00 in the morning to go to work. On June 3rd he and plaintiff went on a trip. They did not get home until about half past two the next morning and did not get up until about noon. That day, the 4th, the husband did not go to work. When they got up the ladders and scaffolding had been put up and were in use. After breakfast plaintiff took the dogs out into the passageway. She says there was then a man up on the scaffolding. The ladders and scaffolding were not taken down when defendant's employees stopped work for the day at 4 o'clock. About 4 o'clock plaintiff and her husband had supper. After supper she washed the dishes in the kitchen sink. It was light outside at that time. There are

two windows in the kitchen, right over the sink, on the passageway. She says she could have seen across the passageway to the Ruehl house if she had looked, but she does not know whether she looked.

The next morning, the 5th, plaintiff and her husband got up at 4 o'clock (presumably daylight saving time), and she went downstairs to prepare his breakfast. Before he came down, she says, "* * * I thought I am afraid to go out after he goes to work and I opened the door, the dogs ran out, I grabbed the sweater as I did not have much clothing on and suddenly I thought that Mr. Flynn had a vicious dog that might get hold of my dogs and I just started and ran, that was all." She ran toward the back of the house, struck the ladder, fell and was injured. She sued defendant, alleging that her injuries were caused by his negligence.

Plaintiff says she did not know the ladders were there; she thought they would take them down at night; she did not investigate to find out whether they were down or not; she did not tell the workmen to take them down. On the morning of the accident there was an electric light in the kitchen. "Q. When you open the door of the kitchen leading out to the walk, does any light go outside the kitchen? A. I was not thinking of light, I did not notice, I was buttoning my sweater.

"Q. Did you leave the door open or close it? A. I always close it, it was cold. * * * .

"Q. So you closed the door, then you chased the dogs? A. They ran and I ran after them.

"Q. When you opened the door and the light came out, you could have looked around and seen what was there? A. I could have if I wanted to but I did not." We may assume, in plaintiff's favor, that "if I wanted to" means only "if it had been my duty."

Defendant's motion for judgment *n. o. v.* was granted on the ground of contributory negligence. We think plaintiff's testimony demonstrates the correctness of this ruling. She had no reason to think the scaffolding, of which the ladders were a part, had been taken down

overnight and no right to act blindly on that assumption. The scaffolding was in the nature of a permanent structure so long as the work was unfinished at the place where the scaffolding was. No emergency confronted plaintiff—or even the dogs. The accident probably would have happened even if the ladders had been on the Ruehl side of the passageway. There is no evidence that plaintiff was entirely on her own property. Thirty inches is a narrow space in which to walk, much less to run. One who runs without thought of light, ladders or looking is not likely to think of or heed an imaginary title line or an actual line between a cement walk and a dirt path. However, in view of the permission to use the passageway and plaintiff's knowledge of the use, the title line is immaterial. In any aspect, plaintiff was negligent in running blindly into the ladder.

"Home accidents" are said to be the most frequent of all accidents, even more frequent than traffic accidents. We frequently meet such accidents through our own negligence, but as a man cannot sue himself, courts have no occasion to decide whether such accidents are due to "primary" negligence in failing to provide one's self a safe place in which to live or to "contributory" negligence in failure to use care to avoid known dangers. One is not under a duty to keep a mental photograph of every highway danger he sees. (Tri-State Engineering Co. v. Graham, 158 Md. 328, 332, 148 A. 439), especially when it is too dark to see it and he has some reason to think it would have been removed. *Caroline County Com'rs. v. Beulah,* 153 Md. 221, 138 A. 25. But it is negligence, as a matter of law, not to avoid a known obvious danger in a highway. *Knight v. Baltimore,* 97 Md. 647, 55 A. 388; *Kaufman Beef Co. v. United Railways Co.,* 135 Md. 524, 109 A. 191, 9 A. L. R. 476. We think one owes no less duty in her own home than a house employee in her employer's home. *Long v. Joestlein,* 193 Md. 211, 66 A 2d 407, to use care to avoid known danger or blindly encountering the unknown.

In some states it is held that momentary forgetfulness, for some real reason, of a known highway danger is

not contributory negligence as a matter of law, but presents a jury question. *Kelly v. Blackstone,* 147 Mass. 448, 18 N. E. 217, 9 Am. St. Rep. 730; *Collins v. City of Janesville,* 111 Wis. 348, 87 N. W. 241, 1087; *City of Meridian v. McBeath,* 80 Miss. 485, 32 So. 53; in other states the contrary is held. *Reynolds v. Los Angeles G. & E. Co.,* 162 Cal. 327, 122 P. 962, 39 L. R. A., N. S., 896, Ann. Cas. 1913D, 34. Though Massachusetts is in the former class, it was held in *Casey v. City of Fitchburg,* 162 Mass. 321, 38 N. E. 499, that a plaintiff who through such forgetfulness, in the dark without taking a light, fell into a ditch dug by a licensee on her own land, *i.e.,* the land of the person with whom she boarded, was guilty of contributory negligence as a matter of law.

*Judgment affirmed, with costs.*